IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CASSIUS M. CLAY, SR.,
      Plaintiff

v.               CIVIL ACTION NO. 05-125 ERIE

TRACEY REEVES, et al.,
      Defendants


MOTION HEARING



Proceedings held before the HONORABLE

SUSAN PARADISE BAXTER, Chief U.S. Magistrate

Judge, in Judge's Chambers, U.S. Courthouse,

Erie, PA, on Thursday, September 21, 2006.




APPEARANCES:
      CASSIUS M. CLAY, SR., Plaintiff herein,
      (via Phone), appearing Pro Se.

      CRAIG E. MARAVICH, Esquire, Deputy Attorney

General, (via Phone), appearing on behalf of

the Defendants.




Ronald J. Bench, RMR - Official Court Reporter



2


1            P R O C E E D I N G S

2

3            (Whereupon, the proceedings began at 11:15 a.m., on

4    Thursday, September 21, 2006, in Judge's Chambers.)

5

6            THE COURT:  This is the case of Cassius M. Clay,

7    Sr., versus Reeves, et al., at Civil Action No. 05-125 Erie.

8    And I wanted us to talk again, because the last time we talked,

9    Mr. Clay, you promised to send me some exhibits.  You sent me

10   some exhibits.  I looked at them and I was scratching my head

11   because what I wanted to know was what was ordered -- I never

12   saw the order.  Did you follow what I mean?

13            MR. CLAY:  Yes.

14       THE COURT:  And did you all get that, Mr. Maravich?

15       MR. MARAVICH:  Your Honor, I have the documents that

16  he filed with the court.  So I should have everything that he

17  filed with you.

18       THE COURT:  But did you look at that, did you see

19  the things that I'm looking for and couldn't find?

20       MR. MARAVICH:  Yes, your Honor.  I don't see the

21  order that the Department of Corrections is following, that's

22  the answer if that's your question.

23       THE COURT:  Right.  Yes.

24       MR. MARAVICH:  I don't see it in his paperwork.

25       THE COURT:  Mr. Clay, why don't you help me out


3


1  there?

2       MR. CLAY:  What I had sent was actually a reply.

3  The actual docket number I thought you could verify, verify the

4  documents knowing that the cases were open by the docket

5  numbers that were sent.

6       MR. MARAVICH:  Excuse me, your Honor.  Are we on the

7  record?

8         THE COURT:  Yes.

9         MR. MARAVICH:  I think so you know, because we're by

10   telephone, we should identify who's in the room?

11         THE COURT:  Please do.

12         MR. MARAVICH:  Your Honor, this is Craig Maravich

13   from the Attorney General's Office, here for the case of

14   Cassius M. Clay, Sr., versus Reeves, et al.  At Civil Action

15   05-125 Erie, Western District of Pennsylvania.

16         THE COURT:  I did that part.

17         MR. MARAVICH:  I'm here on behalf of the defendants.

18   Also in the room is Christina Kennedy.  Christina Kennedy is

19   the superintendent's assistant here at FCI Forest.  Also in the

20   room is the plaintiff, Mr. Cassius Clay, DQ-5954.

21         THE COURT:  In this room is the court reporter and

22   my staff attorney, Cynthia Sander, Esquire, and myself.

23   All right, go ahead, Mr. Clay, you were saying?

24         MR. CLAY:  Okay.  The previous papers that I did

25   send had the docketing numbers from the cases that were open

4

1   and that were used in this case to state that they were closed

2    or opened.

3          THE COURT:  Let me explain, Mr. Clay.  You're

4    telling me that they are taking out money they shouldn't be

5    taking out pursuant to a court order.  If I don't see that,

6    then I just have your word for it, I need to see that court

7    order.

8          MR. CLAY:  From the money that they're taking out

9    from the child support you're talking about?

10         THE COURT:  Isn't that what you're complaining

11   about?

12         MR. CLAY:  Yes.

13         THE COURT:  That's what I'm talking about.

14         MR. MARAVICH:  Mr. Clay, she's asking you right now

15   about your claim that the money being taken out for child

16   support that you -- it's my understanding that you don't

17   believe should be taken out, is that correct?

18         MR. CLAY:  Yes, that's correct.

19         MR. MARAVICH:  Okay.  She's asking, what her Honor

20   is asking right now --

21         THE COURT:  Because that was the subject of your

22   preliminary injunction motion?

23         MR. CLAY:  Yes.  On Exhibit 1, I believe, according

24   to the papers I had sent you, that's from the child support,

25   where it states on that paper that the order for support, one

5

1   child, is suspended effective 6/25/98.  This is one of the

2   cases they were taking money from.

3        THE COURT:  Hold on one second, let me take a look.

4   I have two filings with two exhibit ones -- so we're taking a

5   look here, hold on.

6        MR. MARAVICH:  Excuse me, your Honor.

7        THE COURT:  Yes.

8        MR. MARAVICH:  Craig Maravich.  If this helps you, I

9   believe that Mr. Clay is referencing you to document number 45

10   that's found on Pacer.

11        THE COURT:  I've got it.

12        MR. MARAVICH:  Going from that document, the first

13   document is one of the attachments.  And he is on the third

14   page of that attachment, attachment five.

15        THE COURT: We're he has it underlined?

16        MR. MARAVICH:  Yes.

17        THE COURT:  The order for support dated 9/10/92, for

18  one child, Cassius Clay, Jr., is hereby suspended effective

19  6/25/98 per administrative review as defendant is incarcerated.

20  What about the next sentence, Mr. Clay.  There were arrears, is

21  that what you're paying, arrears?

22        MR. CLAY:  Yes, but the arrears are suspended until

23  I get out and pay.  They were supposed to be what they call

24  aggregated --

25        THE COURT:  But this is so badly worded that I don't


                                6


1  understand it.  It sounds like the order for support was

2  suspended, but arrears were continued to be paid at $8 per

3  month.

4        MR. CLAY:  One thing you're not -- what I want to

5  say is you don't have to pay for arrears unless you have a

6  current support order.  That's the case Phelps v. Sunn.

7        MR. MARAVICH:  Your Honor, this is Craig Maravich.

8  I think I can answer the questions here and address this issue

9  rather quickly.

10        THE COURT:  Well, then, I'm going to give you the

11   floor, Mr. Maravich, you go right ahead.

12      MR. MARAVICH:  Thank you.  Now, I'm up here at SCI

13  Forest.  The documents that you have in front of you that Mr.

14  Clay has provided are untimely.  The Department of Corrections

15  is following, if you would like, if you would provide me your

16  fax number, I can fax you the order that they are following at

17  this time.

18      THE COURT:  That is what I was actually asking from

19  him.  I didn't have the correct order, seemed as though I

20  didn't.

21      MR. MARAVICH:  You don't.

22      THE COURT:  My fax number is 814-464-9637.  What is

23  the date on that order that you are going to send me?

24      MR. MARAVICH:  Your Honor, I only have one copy at

25  this time, I'm going to read you what is the pertinent portion

7

1  of the order.

2      THE COURT:  All right.

3      MR. MARAVICH:  It reads from the top "order/notice

4  to withhold income for support.  State, Commonwealth of

5  Pennsylvania.  County, City, District of Allegheny.  Date of

6    order, 02/28/05.  In the case of Cassius M. Clay, Sr., Social

7    Security No. █████████████ "  It was sent to the Department of

8    Corrections at the address of SCI Greensburg, RR 10 Box 10,

9    Greensburg, PA 15601.  It directs that a total of $5 per month

10   is to be forwarded.  And that payment for child support goes

11   to, which I was not familiar with, it's called Pennsylvania

12   State Collections and Disbursement Unit, PA SCDU.  This is

13   submitted by, you'll see on the second page, the Court of

14   Common Pleas, Family Division, Adult Section, 440 Ross Street,

15   Pittsburgh, PA, 15219.

16          THE COURT:  Does it say if that's for arrears or for

17   a support payment?

18          MR. MARAVICH:  It says "$5 per month in past-due

19   support," and arrears are checked.  It also, through an

20   addendum, describes who is owed, which is Lisa M.

21   Allen-Williams for Cassius Clay, Jr.  And also Tawnya L. Thomas

22   for, and Mr. Clay can correct me if I get these wrong, it looks

23   like Shaqua L. Clay and Ryeisha K. Clay.  We will fax these to

24   you right now.  Your Honor, if Mr. Clay has an issue with that

25   order, then his remedy is to go back to that court.

8

1        THE COURT:  That is correct, Mr. Clay.  Do you have

2  any proof that that order was suspended?

3        MR. CLAY:  Yes.  That order was actually like -- to

4  clear a few things up, first of all.  That order was a

5  modification from their existing order that I submitted to the

6  court as Exhibit 1.  The only extra copy I have is Tawnya

7  Thomas's original copy.  That order is still -- you'll see when

8  it comes through, that order was for a modification of

9  arrearages again to be paid when I get out.  That was the whole

10  case in February was about modification of support arrearages

11  that were due.  Not the actual support payment.  Because,

12  again, from that hearing, I believe we could probably get the

13  transcripts from that hearing, but it states that was for

14  arrearage purpose only, not for support.

15        MR. MARAVICH:  Your Honor, if I may.

16        THE COURT:  Yes.

17        MR. MARAVICH:  First of all, Mr. Clay does not

18  exactly take the latest order.  I guess this court need not

19  deal with the fact that the order that's been issued, that is

20  the order the Department of Corrections followed.  If he has an

21  issue or he has an argument, which is he does not owe that

22  money, money should not be taken out due to that order, he

23  should petition the Family Court of Allegheny County and take

24  that issue up with them.  Not by going to different courts

25  trying to get another court to direct state court orders.


9


1       THE COURT:  That's correct.  If you have a case that

2  says that you don't have to pay arrearages, if you have a

3  suspension, that's for you to take up with the court issuing

4  the order.  All right, I will at least now have the information

5  that I need to rule on the motion for preliminary injunction.

6       MR. CLAY:  Yes, your Honor, I would like to state

7  for the record that the DOC here has the power over inmate's

8  accounts and, again -- they cannot deduct for any order that is

9  not associated with a criminal proceeding.

10      THE COURT:  They cannot ignore or disobey a court

11  order period.  And if there's a court order telling them to

12  take out $5 dollars a month, they have to do it.

13      MR. CLAY:  The only reason --

14      THE COURT:  Mr. Clay, I'm talking, I'm not done.

15        MR. CLAY:  Okay.

16        THE COURT:  And if you, and the reason I was looking

17  at this issue is because you told me the order had been

18  suspended, I thought maybe it was a clerical error with the

19  folks there at FCI Forest, that perhaps they didn't get that

20  the order was suspended, I wanted to see a suspended order from

21  the state courts.  When I didn't get that, I decided to ask you

22  is there such a suspension as you claim.

23        MR. CLAY:  Yes.

24        THE COURT:  Now, we have an order dated 2005 that

25  says this money is to be taken out.  It's not suspended, it's


                                10


1  an order, and they have to follow it.  They cannot just not

2  follow a court order, anymore than you can't follow a court

3  order, do you understand?

4        MR. CLAY:  Yes.  The only thing I would like to say,

5  that still is not an order for child support.  It's an order,

6  if you have the order -- do you have the order yet?

7        THE COURT:  We're going to look at it, it hasn't

8  come yet.  But the point is I don't care what it's for, they

9  have an order from the Court of Common Pleas to take this money

10  out of your account.  If you think that order was entered

11  incorrectly, then you have to go back there and fight your

12  battle.  But if you had an order that suspended the requirement

13  to take money out, then I could have looked at it.  Do you see

14  the difference.  But you don't have an order suspending the

15  2005 order, then your fight, as Mr. Maravich has been arguing,

16  is with the court that issued this order, not with me.

17          MR. CLAY:  But the order from 2005 again is not for

18  support.  It's for arrearages.

19          THE COURT:  I don't care what it's for.  It tells

20  them that they have to take money out of your account.

21          MR. MARAVICH:  If you don't agree, you have to go to

22  family court.

23          THE COURT:  My point is this.  If they were

24  mistakenly taking the money out and there had been a rescinded

25  order -- then you can come to federal court and say there's a


11


1  mistake, they shouldn't be taking the money out, that order is

2  no longer viable and I'm coming to you for help.  But there is

3    an order out that there that was not rescinded and it says to

4    take the money out.  And I can't overrule the state court on

5    that order.  Now, your point is they're taking money the wrong

6    way.  But you don't fight with me, there's an order out there

7    that I can't overrule.  You have to take a motion back to that

8    court and say rethink this order, it's wrong.  But not with me.

9    Do you see the distinction?

10        MR. CLAY:  Yes.  But may I just say one more thing.

11   I'm actually finished with -- because the original order,

12   Exhibit 1, has never been rescinded, either.  It's still

13   suspended.

14        THE COURT:  That's correct.  I understand that.  But

15   then another order was issued that said $5 a month for

16   arrearages.  That's the one I'm looking at right now.  It's

17   dated 2005.

18        MR. CLAY:  Which is to be paid upon release.  I

19   don't have a copy of that.  I've seen that probably a total of

20   one or two times before.  I don't have a copy of that order.

21   But I know which order you're talking about.

22        THE COURT:  I'm looking, I don't see where it says

23   anywhere pay upon release.  Do you see anything, Mr. Maravich,

24   that says that?

25        MR. MARAVICH:  Your Honor, I don't.

12

1        THE COURT:  All right.  Then had you made all the

2   arguments you wish to make, Mr. Clay?

3        MR. CLAY:  On that point?

4        THE COURT:  Yes.

5        MR. CLAY:  About that case, yes.

6        THE COURT:  Then I have all the information I need

7   to rule on the motion for preliminary injunction, that's what I

8   was needing this information for.  All right.  Anything else,

9   Mr. Maravich?

10        MR. MARAVICH:  I don't have anything, your Honor.

11        THE COURT:  Okay.  Mr. Clay, any other issues?

12        MR. CLAY:  I kind of did have issues with the case

13   still not being again suspended, not having the case listed

14   here, not only this case, my criminal cases.  The defendants

15   are still stating to this day that I have no -- which we talked

16   about, if I had no open cases, they arbitrarily take all of my

17   legal work and again deny me access to the courts.

18        THE COURT:  Ms. Kennedy, did you hear what he said?

19        MS. KENNEDY:  Yes, I did.

20        THE COURT:  Is there some sort of status listed with

21   him that he has no open cases?

22        MS. KENNEDY:  Yes, your Honor.  Mr. Clay filed a

23   grievance relative to this matter.  Through the administrative

24   remedies, there's two subsequent levels of appeal that we did

25   follow.  We considered the matter resolved.  Mr. Clay disagreed


13


1    and it went through the appeals system.  And a final decision

2    on that by our Central Office was September 8th of '06.

3    Upholding our decision and further stating that they went

4    through our chief counsel's office, our chief counsel's office

5    has verified Mr. Clay has no open cases, thus has no right to

6    any extra boxes for legal matters.

7         THE COURT:  How can you say he has no open cases

8    when we're sitting here talking about one?

9         MR. MARAVICH:  Excuse me, your Honor.  I think,

10   first of all, what Ms. Kennedy actually went through were the

11   administrative remedies.

12        THE COURT:  Are you talking about open

13   administrative remedies?

14        MR. MARAVICH:  She's referring to what actually went

15   through on grievance.  If I may, we're all familiar that there

16   is standard property that is allowed in prison.  They're

17   allowed a food locker and two reference volumes.  Then if he

18   needs it, he can request and receive an exception to that,

19   which they put the boxes in a storage area, and he does an

20   exchange, say once a month.  They have already gone through and

21   asked Mr. Clay to tell them what the extra cases are and to say

22   what he has.  What cases are active.  Mr. Clay, as we've seen

23   on the last issue, doesn't always provide the latest on

24   updates.  If he would like to refer to documents, I think

25   that's what he was initially discussing, I would entertain to


                              14


1   discuss what he presented to the court on this issue.

2        THE COURT:  Let's do this first.  Mr. Clay, besides

3   this case that we're talking about here, what other open cases

4   do you have in either federal or state court?

5        MR. CLAY:  Okay, besides this case, there's two

6   other open cases in the federal court system now, that deals

7  with federal habeas corpus.

8         MR. MARAVICH:  Read her the caption you have,

9  plaintiff versus defendant and the number of the case.

10        MR. CLAY:  Okay.  I was going to state how they came

11  about, which is very important to me and how to make the

12  decisions, because you can't always appeal in one court system

13  to the other.  Your case will be open upon the docketing and

14  filing documents of the cases.  But, again, we have MD --

15        THE COURT:  Middle District of Pennsylvania?

16        MR. CLAY:  Excuse me, Western District.  Habeas

17  corpus, Civil Action No. 06-861.  And that's in front of Judge

18  Donetta Ambrose, Magistrate Judge Amy Reynolds Hay.  That would

19  be for Cassius M. Clay versus Raymond Sobina.

20        THE COURT:  The next one?

21        MR. CLAY:  The next one, which came from the case of

22  Commonwealth of Pennsylvania versus Cassius Clay, this was in

23  the Supreme Court of the Western District, at No. 140-WAL-2006.

24  Now, this petition, as he was saying before, is current.

25  That's just got decided on August 29th.  Which is in between

15

1   the time it was pending.  Also, with that case closing, I have

2   opened a federal habeas corpus, which I had mailed on September

3   13th, and I have a verified statement, but not the court number

4   as of yet.

5       THE COURT:  Let's go back -- I'm talking to Ms.

6   Kennedy.  What that says to Ms. Kennedy is some of these things

7   probably were opened after the administrative process was going

8   through.  So what has been upheld by the Central Office could

9   be out of date.  That would not include the case that we're

10  working on here today that was filed in '05.  Nonetheless, you

11  know he has a constitutional right to have his box of materials

12  to work on his open cases.  Whether or not they're criminal or

13  civil.  Let's just be sure that he's getting that opportunity.

14      MR. MARAVICH:  Yes, your Honor.  Your Honor, by the

15  administrative remedies they tried to get it right before.  He

16  does not provide them with up-to-date information.  If he were

17  to file a grievance saying these are my open cases, I need to

18  keep that property, then he keeps that property.  When the

19  cases are closed, he tries to act by having extra property.

20      THE COURT:  He's telling you the cases are open at

21  the same time they took the property.  You have to continually

22  grieve then if they're taking your property.

23      MR. CLAY:  Yes, ma'am, that's what I've been doing.

24      MS. KENNEDY:  Your Honor, if I may.

25      THE COURT:  Yes, Ms. Kennedy.


16


1       MS. KENNEDY:  We attempted to resolve this through

2  Mr. Clay, by meeting with him personally myself and asking him

3  to prove what was open and what was not.  Which he provided

4  numerous documentation that made it nearly impossible, and I'm

5  not a lawyer, to determine what was active and what was not.

6  What cases are relative to each other.  I have personally asked

7  Mr. Clay to make a good-faith effort to go through his property

8  and clean out things he knew were not relative to his cases.

9  We agreed that he would do that.  And there was some property

10  sent home.  To my knowledge, at that point the matter had been

11  resolved.

12      THE COURT:  That's not working for you, Mr. Clay?

13      MR. CLAY:  No.  The problem is when they came and

14  took my materials, all the materials they took were for already

15  opened cases.

16          THE COURT:  But you were supposed to clean that out

17    yourself?

18          MR. CLAY:  Yes, I cleaned out that same day, we had

19    possibly 15 minutes to go through three boxes.  I had

20    authorization, this all came from my authorization of me not

21    being seen in person.  But perhaps since I had authorization to

22    have three boxes in my possession, which should be on file,

23    which for some odd reason it was never on file.

24          THE COURT:  One box, it works.  You can do it.  All

25    right, anything else from anyone?


17


1          MR. MARAVICH:  No, your Honor.

2          MR. CLAY:  No.

3          THE COURT:  Then we're adjourned.

4

5          (Whereupon, at 11:45 a.m., the proceedings were

6    concluded.)

7

8                    - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

18

1          C E R T I F I C A T E

2

3

4

5      I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11

12   _____

13   Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25