**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CASSIUS CLAY, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 05-125E |
| v. | ) Judge Sean J. McLaughlin |
| | ) Mag. Judge Susan Paradise Baxter |
| TRACY REEVES, et al., | ) |
| | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

AND NOW, come the defendants, Tracy Reeves, Angie Marhefka, Jack Loughry, Sharon Burks, David Wakefield, Candis Brimmer and Jeffrey Beard, by their attorneys, Thomas W. Corbett Jr., Attorney General, Mary Friedline, Senior Deputy Attorney General, and Susan J. Forney, Chief Deputy Attorney General, Chief, Litigation Section, and respectfully submit the following Brief in Support of their Motion for Summary Judgment:

**STATEMENT OF THE CASE**

*Procedural History*

Plaintiff Cassius Clay, Sr., an inmate acting pro se, initiated this civil rights action pursuant to 42 U.S.C. §1983 on April 28, 2005. (Docket #1) Plaintiff claims that the defendants conspired to deprive him of property by illegally deducting money from his prison account to pay a suspended child support order, that they denied him access to the courts by refusing to advance him funds after the money deducted left him without sufficient funds to prosecute an appeal of his criminal case, and that DC-ADM 005 is unconstitutional. (*Id.*) On February 16, 2006, defendants moved to dismiss the Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Docket #26) The Motion was denied without prejudice on

June 27, 2006.  (Docket #38)  Defendants filed an Answer on July 14, 2006 denying the allegations and raising affirmative defenses.  (Docket #39)

Plaintiff filed a Motion for Preliminary Injunction on July 24, 2006 claiming that his due process rights were being violated by the unlawful deduction of money from his account, that defendants were retaliating against him by confiscating legal documents and that he feared that he would be transferred to another facility as further retaliation and to impede his ability to have access to the courts.  (Docket #41)  Two telephonic hearings were held before Magistrate Judge Baxter.  The second hearing on September 21, 2006 was recorded and has been transcribed.  (Docket #57, Exh. 1)   The Magistrate Judge issued a Report and Recommendation dated September 28, 2006 recommending that the Motion for Preliminary Injunction be denied based on lack of federal court jurisdiction over plaintiff's claims.  (Docket #49)  After numerous requests for enlargement of time, plaintiff filed Objections to the Report and Recommendation on November 17, 2006.  (Docket #60)  By Order dated November 20, 2006, Judge McLaughlin reviewed plaintiff's untimely Objections, *nunc pro tunc*, adopted the Report and Recommendation of Magistrate Baxter in full, and denied the Motion for Preliminary Injunction.  Plaintiff filed a Notice of Appeal on December 21, 2006.  (Docket #61)

*Statement of the Facts*

Plaintiff is the named defendant in three child support actions pending in the Court of Common Pleas of Allegheny County.  In two of the actions, wage attachment orders were issued and served upon S.C.I Greensburg where plaintiff was currently incarcerated.  The first support action was filed on June 4, 1986 by Tawnya L. Thomas for one child, Shaqua L. Clay, born December 20, 1985.  (Ex. 2) The case is docketed in the Court of Common Pleas at FD86-04623.

2

Plaintiff signed an Acknowledgement of Paternity for Shaqua on January 17, 1991.  (Exh. 3.) Following a hearing to establish the amount of child support, plaintiff was ordered to pay $50.00 per month. (Exh. 4.)   Ms. Thomas filed a second Complaint against plaintiff for the support of Ryeisha Kamey Clay, born May 28, 1991, which was consolidated with the prior complaint. (Exh. 5.)  Following a hearing to establish support on July 9, 1992, plaintiff was found to be the biological father of Ryeisha Kamey Clay and ordered to pay child support to Tawnya Thomas for both children in the amount of $220.00 per month, plus $50 per month on arrears of $3235. (Exh. 6.)  Ms. Thomas was receiving public assistance at the time, and the support arrears are owed to the Pennsylvania Department of Public Welfare.  (Exh. 1 p. 7.)

     Lisa Allen-Williams filed a support action against plaintiff for the support of one child, Cassius Clay, Jr., born September 2, 1986.  (Exh. 7.)  That case is docketed at FD 87-00155. Plaintiff filed an Acknowledgement of Paternity for Cassius Clay, Jr. on January 17, 1991.  (Exh. 8.)   By order dated January 2, 1992, plaintiff was ordered to pay $50.00 per month in child support for Cassius Clay, Jr. and pay arrears of $290.00 in full.   (Exh. 9.)  A third child support complaint was filed against plaintiff by Patrice Burney for Deandre, born January 8, 1986.  That action is pending at FD93-01087.

     Plaintiff was arrested on October 17, 1996 and held in the Allegheny County Jail until he was tried, convicted and sentenced to twelve to fifty years by the Court of Common Pleas of Allegheny County.  (Docket #1; Exh. 11.)  He is currently confined at S.C.I. Forest.   On plaintiff's motion, all three child support orders were suspended pending his release from prison. (*Id*.)  At the time the orders were suspended, plaintiff was behind on all child support payments and substantial arrears had accrued.  By Order dated December 13, 2002, the Allegheny County Court of Common Pleas issued an Order requiring plaintiff to pay $8.00 per month towards

**arrears** on each of the support orders for Shaqua, Ryeisha and Cassius.  The order also stated as follows:

> A mandatory income attachment will issue unless the defendant is not in arrears in payment in an amount equal to or greater than one month's support obligation and (1) the court finds that there is good cause not to require immediate income withholding; or (2) a written agreement is reached between the parties which provides for an alternate arrangement.

(Exh. 10.)   The Court of Common Pleas of Allegheny County then issued an amended order dated March 21, 2003, which ordered S.C.I Greensburg to deduct $24.00 per month, from plaintiff's account and send it to Pennsylvania State Collections and Disbursement Unit ("SCDU") in Harrisburg, Pennsylvania.[1]  (Docket #45 – Plaintiff's Exhibits in Support of Motion for Preliminary Injunction;  see also Exh. 14 – 4/7/05 Miller memo.)

By letter dated March 18, 2003, plaintiff asked the Family Division to suspend his payment on arrearages in all his outstanding support cases, as well as his current monthly support obligation, based on a lack of income.  (Exh. 11).   Then, on April 30, 2003, plaintiff filed a Petition for Termination/Modification of Arrears From an Existing Support Order in FD 87-00155.  (Exh. 13.)   On August  29, 2003, plaintiff filed Petitions for Termination/Modification of Arrears From an Existing Support Order in FD 87-00155 and FD 86-04623, asking the court to suspend his obligation to pay any amount on arrears.  (Exs. 14 & 15.)   A hearing on plaintiff's Petitions was scheduled before Hearing Officer Jeannie Bingman.  (Exh. 16.)   At the hearing on February 25, 2005, Wife was represented by counsel and defendant participated by telephone *pro se*.  At the conclusion of the hearing, a recommendation was issued requiring that plaintiff pay

---

[1] According to DOC policy, if an order to withhold income for support is received, a maximum of 50% shall be collected to satisfy the debts, provided the inmate's account balance exceeds $10.00.  DC-ADM 005 VI(F) and VI.I.   Payment for court orders for child support is to be deducted from income received by an inmate.  Income is defined as "all funds credited to an inmate's account regardless of source."  (Exh. 12.)

$2.50 per month on arrears set at $11,919.83 in FD 86-04623, and $2.50 per month on arrears set at $6,307.67 in FD 87-00155. (Exh. 17.) All arrears are owed to Department of Public Welfare. (Exh. 18, p.2.)

Plaintiff did not file exceptions to the recommendation of the hearing officer. A final **consent** order was entered March 7, 2005 which provided for mandatory income attachment. (Exh. 18.) S.C.I Greensburg was served with an Amended Order dated February 28, 2005, directing it to deduct $2.50 from plaintiff's account monthly towards support arrears of $6307.67 in 87-00155 and $2.50 per month to pay towards support arrears of $11,919.83 in FD 86-04623. (Exh. 19.)

S.C.I Greensburg complied with all wage attachment orders and deducted the appropriate amount each month from plaintiff's account in accordance with DOC policy and sent it to SCDU, which is the basis for plaintiff's complaint. (Cplt. ¶13.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Upon a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir. 1997). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Rule 56(e) does not

allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicion. Fireman's Insurance Company of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). There is no issue for trial unless there is sufficient evidence in the record favoring the non-moving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). In deciding a motion for summary judgment, the court construes all facts and inferences in the light most favorable to the non-moving party. Pollack v. AT&T, 794 F.2d 860, 864 (3d Cir. 1986).

## ARGUMENT

### I. Abstention is Proper under the *Rooker Feldman* Doctrine

All relief sought in this action requires the court to reverse or void an Order of the Family Division of the Court of Common Pleas of Allegheny County directing plaintiff to make a small payment each month during his incarceration towards **arrears** which accrued prior to his incarceration. Plaintiff contends that he is under no legal obligation to make any payment towards child support after the orders were suspended. (Exh. 1, p. 5-6). Plaintiff is not questioning the amount which was deducted from his account. Rather, his contention is that S.C.I. Greensburg deprived him of due process by deducting money from his account to pay child support after the child support order had been suspended. (Cplt. ¶ 67.) Plaintiff further argues that the DOC has no power to deduct any amount from an inmate's account for "any order not associated with a criminal proceeding." (Exh. 1, p. 9; Cplt. ¶ 68-69.)

In her Memorandum Opinion denying plaintiff's Motion for Preliminary Injunction, Magistrate Judge Baxter correctly ruled that this court is without jurisdiction over plaintiff's claims under the *Rooker Feldman* doctrine and the domestic relations exception to federal court

jurisdiction. Under the *Rooker Feldman* doctrine, lower federal courts may not exercise jurisdiction over claims that were "actually litigated" in state court or are "'inextricably intertwined with the state adjudication,' meaning that 'federal relief can only be predicated upon a conviction that the state court was wrong.'" Walker v. Horn, 385 F.3d 321 (3d Cir. 2004). The *Rooker Feldman* doctrine rests on the proposition that federal district courts do not have the power to sit in review of state court decisions. Atlantic Coastline Railroad v. Board of Locomotive Engineers, 398 U.S. 281 (1970). It mandates that any review of state court orders must be left to state appellate courts.

Magistrate Judge Baxter succinctly stated that "application of *Rooker-Feldman* in this instance is straightforward, as that doctrine does not 'permit a disappointed state court plaintiff to seek review of a state court decision in the federal court by masquerading his complaint in the form of a federal civil rights action.'" Logan v. Lillie, 965 F. Supp. 695 (E.D. Pa 1997). She ruled that plaintiff's claims implicate the validity of, and are inextricably intertwined with, state court rulings made in the court of child support determinations, jurisdiction in federal court is precluded. Parkview Associates Partnership v. City of Lebanon, 225 F. 3d 321 (3d Cir. 2000), *cert. denied*, 535 U.S. 1055 (2002).

At the preliminary injunction hearing, plaintiff did not disclose to the court that he had previously challenged his obligation to pay arrears while the child support orders were suspended in the Family Division. (See Exh's 13, 14, 15.) He did not disclose that a hearing was held on this exact issue and that the Family Division ruled against him. He did not disclose that no exceptions were filed or that he entered into a consent order agreeing to the payment and to the wage attachment while incarcerated. (Exh. 18.) Plaintiff's pleadings filed in the two support actions establish that he has fully litigated his obligation to pay arrears while

incarcerated, and the right to wage attachment. Accordingly, the action is barred by the *Rooker-Feldman* doctrine.

Magistrate Judge Baxter further determined that federal jurisdiction is precluded pursuant to the "domestic relations exception" which divests the federal court of power to issue rulings relating to divorce, alimony and child support, matters which are exclusively in the jurisdiction of state courts. Ankenbrandt v. Richards, 504 U.S. 689 (1992). The state court issued orders for plaintiff to pay child support. Plaintiff failed to pay in accordance with the orders and substantial arrears accumulated. When plaintiff was incarcerated, the state court suspended his monthly obligation to pay child support, but ordered him to pay a minimal amount each month towards those arrears while he was incarcerated. Plaintiff challenged that order in state court and lost. He then consented to an order which required him to pay $5.00 per month and provided for mandatory wage attachment. Wage attachment orders were served upon the Department of Corrections.

All the relief sought by plaintiff in this action (*e.g.*, declaring that DOC improperly collected money from his account pursuant to the Family Court orders, and that he was thus denied access to the courts because he did not have sufficient funds to pay filing fees in other actions) requires this court to void or reverse a final ruling of the Family Division of the Court of Common Pleas of Allegheny County in a domestic relations matter. Under well established federal law, this court is without jurisdiction over plaintiff's claims.

There are no material issues of fact in dispute and defendants are entitled to judgment in their favor as a matter of law.

## II. Alternatively, the Court Should Abstain from Reaching Plaintiff's Constitutional Challenge to DC-ADM 005 under *Pullman*

Although plaintiff raises several vague complaints about DC-ADM 005[2], the one claim which is clear is his argument that the DOC cannot collect for obligations imposed by a **civil** court, an issue which he claims has been decided in his favor by the Pennsylvania Commonwealth Court. (Cplt. ¶ 68-69; Exh. 1, p.9.) Although phrased as a challenge to DOC policy, plaintiff is also challenging the statutory basis for that policy, section 9728 of the Sentencing Code.

There is indeed a case pending in the Commonwealth Court addressing this very issue, *i.e.,* whether deductions can be made from an inmate's account pursuant to a court order that was not part of a criminal proceeding - Vega v. Beard et al, 916 MD 2002. However, there has been no final determination on inmate Vega's claim for declaratory and injunctive relief involving the DOC policy. The Commonwealth Court has only issued an opinion dismissing the Department's preliminary objections. Vega v. Beard et al, 847 A.2d 153 (Pa. Cmwlth. 2004). In that decision, the Court found that for purposes of ruling on defendants' demurrer, it was not at all clear that the DOC had authority under 42 Pa. C.S. § 9728(b)(5) of the Sentencing Code to deduct funds pursuant to a court order that was not part of a criminal proceeding.

However, in her dissent, Judge Friedman found that the Department's interpretation of the phrase "court-ordered" in §9728(b)(5) to mean both civil and sentencing-court ordered made sense in light of the DOC's duty to manage the flow of money into and out of inmate personal

---

[2] He seems to be arguing that DOC cannot pay the Family Court-ordered obligation out of funds in his account received from family and friends. This suggests that money placed in his account (or in any bank account) can somehow be tagged, segregated and traced. Further, this ignores the fact that plaintiff had sufficient wage income to satisfy the modified arrearage order of $5.00 per month. He admitted in his petition seeking modification of his obligation to pay arrears that he was making $30.00 per month from his prisoner job. (Exh. 14, ¶7.) While he goes on to claim that he was starting a new job making only $.25 per hour, that wage was still considered sufficient to meet the $5.00 obligation – an obligation that plaintiff himself consented to pay while in prison. (Exh. 14, ¶ 9; Exh. 18.)

accounts. Vega, 847 A.2d at 159. As reflected in the attached Docket Sheet for the Vega case, this case has proceeded before the Commonwealth Court and the DOC has filed a Motion for Judgment on the Pleadings. (Exh. 20.)

Under the *Pullman* abstention doctrine[3] federal courts may abstain if the state court's resolution of a state law issue would obviate the need for federal courts to reach a federal constitutional issue. Artway v. Attorney General of NJ, 81 F.3d 1235, 1270 (3d Cir. 1996). The "special circumstances" required to justify abstention in such a case are:

1) there must be uncertain issues of state law;

2) the issues must be amenable to an interpretation by state courts that obviate the need for federal court adjudication of the constitutional issue;

3) an erroneous decision of state law by federal courts would be disruptive to important state policies.

D'Iorio v. County of Delaware, 592 F.2d 681, 686 (3d Cir. 1978).

Although the *Pullman* abstention doctrine is a narrow exception to federal court jurisdiction, the circumstances here are compelling. Plaintiff's constitutional claim turns upon the construction of a state statute which authorizes the DOC to collect funds pursuant to court order - 42 Pa.C.S. §9728(b)(5), and whether the phrase "court-ordered" can be reasonably construed to include civil court support and arrearage orders, as reflected in the DOC's adoption of DC-ADM 005. This is the precise issue before the Commonwealth Court in the Vega case. Further, the dissenting opinion on the DOC's preliminary objections in that case makes it clear that this statute is susceptible to a construction which would obviate the need for the district court to reach plaintiff's constitutional claim. Vega, 847 A.2d at 159. That opinion also reflects the important state policies at issue – the DOC's duty to manage the flow of money into and out

---

[3] Railroad Commission v. Pullman, 312 U.S. 496 (1941)

of inmate personal accounts, and the corresponding interests in assuring compliance with support orders and reimbursement to the state.

Thus, defendants respectfully submit that special circumstances exist which warrant the application of *Pullman* abstention to plaintiff's constitutional claim. Should the Commonwealth determine that Vega's claims are moot or otherwise choose not to decide that issue, then defendants request leave to submit a supplemental motion for summary judgment in this proceeding for the sole purposes of addressing the constitutionality of DC-ADM 005.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested this motion for summary judgment be granted.

Respectfully submitted,

**THOMAS W. CORBETT JR.,**
**Attorney General**

By:    /s/ Mary Lynch Friedline
MARY LYNCH FRIEDLINE
Senior Deputy Attorney General
PA I.D. # 47046

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
5th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

Date: January 3, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2007, I electronically filed the foregoing *Brief in Support of Motion for Summary Judgment* with the Clerk of Court using the CM/ECF system. And I hereby certify that I have mailed the foregoing document by United States Postal Service to the following non CM/ECF participants:

Cassis M. Clay, Sr., DQ-5954
SCI-Forest
P.O. Box 945
Marienville, PA 16239-0945

By: /s/ Mary Friedline
MARY FRIEDLINE
Senior Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
5th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15129