IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CASSIUS CLAY, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | )  Civil Action No. 05-125E |
| v. | ) Judge Sean J. McLaughlin |
| | ) Mag. Judge Susan Paradise Baxter |
| TRACY REEVES, et al., | ) |
| | ) |
| Defendants. | ) |

**SUPPLEMENTAL BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

AND NOW come the defendants, by their attorneys, Thomas W. Corbett Jr., Attorney General, Mary Friedline, Senior Deputy Attorney General, and Susan J. Forney, Chief Deputy Attorney General, Chief, Litigation Section, and pursuant to this Court's July 18, 2007 Order, submit the following Supplemental Brief concerning their Motion for Summary Judgment:

**I.**     *Vega v. Beard*, **916 M.D. 2002**

The *Vega v. Beard* matter remains pending before the Commonwealth Court. As reflected in the attached docket sheet, the DOC defendants filed a Motion for Judgment on the Pleadings and Suggestion of Mootness on November 22, 2006.[1] Petitioner Vega filed his response brief on December 21, 2006 and defendants filed a reply on January 17, 2007. (Exh. A.) The docket reflects that the Motion was "submitted on briefs" on January 26, 2007. No decision has been rendered.

In the course of investigating the current status of *Vega*, counsel for defendants learned of several other recently-decided Commonwealth Court cases which, quite frankly, may be more to

---

[1] The DOC had discontinued withdrawals from Vega's account in October 2005; withdrawals had been made pursuant to a New Jersey consent order through the Uniform Interstate Family Support Act.

the point than *Vega*. In particular, the June 8, 2007 *Fisher* decision (discussed below), now on appeal to the Pennsylvania Supreme Court, found that DOC could not rely upon its definition of income in DC-ADM 005 for purposes of deducting commingled account funds pursuant to a support order. (Exh. B hereto.) This issue (DC-ADM 005's definition of income) was touched upon by Clay in his complaint (see ¶¶ 50, 55, 63) and addressed briefly in defendants' original brief at page 9, footnote 2. However, undersigned counsel focused more on the issue in *Vega* (whether a civil court support order was within the scope of Act 84). When defendants filed their Motion for Summary Judgment in January, undersigned counsel was not aware of the *Rosario* and *Fisher* cases (but admittedly, she should have been), both of which were pending and relevant here.

## II.     *Rosario v. Beard* and *Fisher v DOC*

On March 14, 2007, the Commonwealth Court issued a memorandum decision in *Rosario v. Beard, et al.*, 920 A.2d 931 (Cmwlth. 2007) which sustained the DOC's preliminary objections to a similar inmate claim concerning support deductions. Inmate Rosario had filed a petition for review seeking to require the DOC to cease taking money out of his inmate account and to hold a hearing regarding how much money he should pay toward his child support obligation. He was earning $24 per month and the DOC was withdrawing 50% to satisfy a Lancaster County Court Order directing Rosario to pay $194.74 per month toward his child support obligation. With his petition, Rosario attached a letter from the DOC which stated that per the Lancaster County Court order, the monthly assessment from his inmate account would be based on his payroll at SCI-Somerset.

Rosario argued, as did the plaintiff in *Vega v. Beard*, that DOC was only entitled to deduct funds from his account pursuant to Section 9728(b)(5) of the Sentencing Code (Act 84), and that child support orders are not within the scope of Act 84. *Rosario*, 920 A.2d at 934. The *Rosario* Court acknowledged that the holding in *Vega* (overruling the DOC's demurrer) was that "deductions cannot be made from an inmate's account, under Section 9728(b)(5), pursuant to a court order that is not part of a criminal proceeding." *Id* at 934. However, the *Rosario* Court then found that Section 9728(b)(5) was irrelevant because DOC was making deductions pursuant to a valid court order issued under the Domestic Relations Code (23 Pa. C.S. § 4348), not pursuant to Act 84. *Rosario*, 920 A.2d at 934-35. In contrast to the *Vega* Court's demurrer ruling, which focused on the scope of Act 84, the *Rosario* Court found that deductions for support are valid under the Domestic Relations Code.

*Rosario* defeats plaintiff's claim that the DOC had no right to take deductions for civil court orders. Nonetheless, that decision may not be completely dispositive because the Court also emphasized that the deductions at issue were limited to Rosario's **earnings** at SCI-Somerset (and DOC had indicated as much in its letter notifying the inmate of the deductions). *Rosario*, 920 A.2d at 935-936. That particular issue, *i.e*., the specific source of inmate funds available for support deductions, was the subject of another decision issued by the Commonwealth Court on June 8, 2007 – *Fisher v. DOC*, 514 M.D. 2005 (attached hereto as Exh. B).

In *Fisher*, the inmate was subject to a Beaver County Court of Common Pleas Support Order directing SCRF Mercer to withhold $288 per month from his income. In complying with the Order, the DOC applied the definition of income in DC-ADM 005, which includes "all funds credited to an inmate's account regardless of source," rather than the definition of income used in the Beaver County Support Order and Domestic Relations Code (23 Pa. C.S. §4302), which

3

focus on compensation for services. Inmate Fisher filed a petition for review alleging that DOC violated his due process rights by taking deductions from "gifts" when it was only authorized to garnish income under the Domestic Relations Code.[2] (Exh. B at 3.) He sought an injunction to stop DOC from withholding funds from his account until it determined that the source of those funds were not gifts. *Id.*

Eventually, the DOC filed a motion for judgment on the pleadings and the inmate applied for summary relief. DOC argued that the definition of "income" in its Policy (which includes monetary gifts commingled with other funds) was reasonably related to the legitimate penological interest of ensuring that inmates meet their financial obligations, and that it would be administratively difficult to track the source of such funds to be sure that only "income" under §4302 is withheld. (Exh. B at 4-5.) The Commonwealth Court rejected DOC's argument, finding that DOC's collection of income from Fisher's account was not in accordance with the Court Order or the §4302 of the Domestic Relations Code.[3] (Exh. B at 5.) Judge Leadbetter concurred in the result, and Judges Simpson and Leavitt dissented. The DOC filed an appeal with the Pennsylvania Supreme Court on June 25, 2007. (Exh. C – Jurisdictional Statement.)

### III.     The Court Should Abstain under *Pullman* from Addressing Plaintiff's Challenge to DC-ADM 005

As stated, read broadly, Clay arguably raised a similar challenge to the definition of income in DC-ADM 005, and his claim in this regard will be guided by the ultimate ruling in *Fisher*. If the Commonwealth Court's ruling is upheld by the Supreme Court, DOC practice on

---

[2] As of September 2005, inmate Fisher had only $14.40 in income and $300 in personal monetary gifts; in September, he received $21.85 in income and $411 in gifts. (Exh. B at 2-3.)

[3] Notably, the Court did not question the propriety of deductions by DOC pursuant to the Domestic Relations Code orders, only the source of funds for those deductions. Thus, *Rosario's* holding that DOC can properly make deductions for support orders pursuant to the Domestic Relations Code stands.

a statewide basis will necessarily change to comply with the decision, rendering plaintiff's injunctive claim moot (to the extent he claims DOC should not be allowed to deduct money from gifts he has received). In that event, defendants would request leave to supplement their Motion for Summary Judgment to argue qualified immunity with respect to any claim for damages related to DOC's reliance on DC-ADM 005 to that point. By the same token, if the *Fisher* ruling is overturned, then plaintiff's challenge to the Policy's definition of income would fail as a matter of law. Therefore, defendants respectfully request that the Court invoke the doctrine of *Pullman* abstention, as argued in defendants' original brief at pages 10-11, and abstain from deciding this particular issue until it is resolved by the Pennsylvania Supreme Court in *Fisher*. Undersigned counsel will monitor that case and advise the Court of the ruling.

Nonetheless, it bears repeating that the facts in this case are quite different from those in *Fisher*. There, the inmate's monthly support obligation was $288 and the record reflected minimal earnings available to Fisher - $14.40 to $21.85. By contrast, Clay filed numerous challenges to his child support and arrearage orders in the Court of Common Pleas, seeking to put his support obligations on hold while incarcerated, and was generally successful. (Defendants MSJ Exh's 14 and 15.) A hearing officer eventually recommended that Clay only pay $5.00 per month toward arrears. Clay did not file exceptions and "consent orders" were entered on March 7, 2005, requiring Clay to pay only $5.00 per month in arrears. (Exh. 18.)

Clay attached monthly income statements to his petitions to modify showing earnings in excess of $30 per month in 2003, with commissary purchases consuming most of that amount. (See Exh. 15, ¶ 7, and attachments thereto reflecting monthly statements). Attached to this supplemental brief is a printout of Clay's more recent monthly accounts showing over $50 per month in inmate wages starting in August 2005, increasing to over $60 in January 2006. (Exh.

D.)[4]  Thus, even if the *Fisher* decision ultimately stands, the minimal court-ordered arrearage obligation in Clay's case - $5.00 – is only a fraction of his earnings. While the deductions for Fisher's support obligations clearly involved non-payroll funds, that is not the case here, where Clay's payroll credits far exceed his Court-ordered arrearage obligation.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court abstain from deciding plaintiff's challenge to DC-ADM 005, but grant defendants' Motion for Summary Judgment motion for summary judgment in all other respects.

                                        Respectfully submitted,

                                        **THOMAS W. CORBETT JR.,**
                                        **Attorney General**


By:    /s/ Mary Lynch Friedline
          MARY LYNCH FRIEDLINE
          Senior Deputy Attorney General
          PA I.D. # 47046

          Susan J. Forney
          Chief Deputy Attorney General
          Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
5th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

Date: July 19, 2007

---

[4] Lack of income in recent months stems from a misconduct on 3/17/07 and Clay's placement in disciplinary custody. (Exh. E.)

6

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2007, I electronically filed the foregoing *Supplemental Brief in Support of Motion for Summary Judgment* with the Clerk of Court using the CM/ECF system.  And I hereby certify that I have mailed the foregoing document by United States Postal Service to the following non CM/ECF participants:

Cassis M. Clay, Sr., DQ-5954
SCI-Forest
P.O. Box 945
Marienville, PA 16239-0945

By:   /s/  Mary Friedline
MARY FRIEDLINE
Senior Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
5th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15129