# EXHIBIT EE



| | |
|---|---|
| **POLICY STATEMENT** | |
| **Commonwealth of Pennsylvania • Department of Corrections** | |

| Policy Subject: | Policy Number: |
|---|---|
| **Inmate Mail and Incoming Publications** | **DC-ADM 803** |

| Date of Issue: | Authority: | Effective Date |
|---|---|---|
| **September 1, 2002** | *Jeffrey A. Beard*<br>**Jeffrey A. Beard, Ph.D.** | **September 30, 2002** |

## I.   AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.   PURPOSE

The purpose of this document is to establish policy and procedures governing inmate mail privileges and incoming publications. [1]

## III.   APPLICABILITY

This policy applies to all inmates and employees, volunteers, and contract vendors who reside or work in facilities under the jurisdiction of the Department with the exception of the Bureau of Community Corrections.

## IV.   DEFINITIONS

### A.   Approved Inmate Name

The committed name and/or a name change that is in accordance with Department policy, **11.5.1, "Records Office Operations."**

---

[1] 1-ABC-5D-01, 1-ABC-5D-04, 2-CO-5D-01

### B. CDCC/MDCC

Camp Hill Diagnostic and Classification Center; Muncy Diagnostic and Classification Center.

### C. Child Pornography

The presentation of sexually explicit behavior involving or depicting children, as in a photograph, intended to arouse sexual excitement.

### D. Contraband

An item that an inmate is prohibited from possessing or an item that an inmate is permitted to possess, but which has been altered or is being used for something other than it's intended purpose.

### E. Explicit Sexual Material

Pursuant to **18 Pa. C.S.A. §5903** explicit materials include: any book, pamphlet, magazine, printed matter however reproduced, which contains any picture, photograph, drawing or similar visual representation or image of a person or portion of the human body which depicts nudity, sexual conduct, or sadomasochistic abuse and which is harmful to minors. Explicit sexual material also includes that which contains detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sadomasochism abuse and which, taken as a whole is harmful to minors.

### F. Facility Manager

The Superintendent of a State Correctional Facility or Regional Correctional Facility, Commander of a Motivational Boot Camp, Director of a Community Corrections Center, Director of the Training Academy.

### G. Incoming Publications Review Committee (IPRC)

A committee of facility personnel selected by the Facility Manager at each facility, that reviews incoming mail that may contain prohibited materials.

### H. Indigent Inmate

An inmate shall be deemed indigent if the combined balances of his/her facility account and any other accounts are $10.00 or less at all times during the thirty days preceding the date on which the inmate submits a request to a person designated by the Facility Manager. Any inmate who refuses available work, although he/she is physically able and is not precluded from work by virtue of his/her housing status, is not indigent for the purposes of this policy and is not eligible for free stationery or to anticipate for postage. Inmates who are self-confined may also be considered as refusing available work although physically able as determined by the Program Review Committee (PRC). Any inmate who has funds in another account, which if deposited in his/her facility account would bring his balance to more than $10.00, is not indigent. Any

inmate who has not made a good faith effort to manage his/her money so as to be able to pay the necessary costs of litigation him/herself is not indigent.

**I.  Facility Mail Distribution System**

The system used to deliver and pick-up mail from inmates within a facility.

**J.  Nude Photographs**

As defined in **18 Pa. C.S.A. §5903**, nude means "showing the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or showing the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple". A photograph is an image of a person, place, or object made using a camera or device which exposes a photosensitive surface to light. For purposes of this policy, pictures in a magazine or other publication of general circulation shall not be considered photographs.

**K.  Obscene Material**

The definition of obscene contained in **18 Pa. C.S.A. §5903**, is "any material or performance, if:

1.  the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

2.  the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section (sexual conduct is defined as patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality; and patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals); and

3.  the subject matter as a whole, lacks serious literary, artistic, political, educational or scientific value."

**L.  Opaque**

Opaque refers to something dense, impervious to the passage of light.

**M.  Presorted Standard Mail**

Mail that usually consists of sales fliers, form letters, or other printed pieces that are generally identical in content but do not meet the criteria of a publication as defined in **Section IV.Q.** of this directive. This mail is specifically identified with a US Postal Service Presorted Standard Mail Stamp.

### N. Privileged Correspondence

1. Outgoing Privileged Correspondence: Outgoing mail addressed to the following persons is privileged correspondence and shall not be opened outside the presence of the inmate who is sending it except as provided for in **Section VI.D.2:**

   a. Elected or appointed federal, state, or local officials: One to whom the inmate has petitioned to redress a grievance. The term elected or appointed official includes, but is not limited to, the courts, the President of the United States, the Governor, the Attorney General and the District Attorney. The term elected or appointed official does not include the Veterans Administration, Bureau of Motor Vehicles, Social Security Administration, Department of Education, the Pennsylvania Prison Society, the Pennsylvania Board of Probation and Parole or to agencies to whom the inmate has applied for benefits.

   b. Attorney: Any person authorized under applicable law to practice law and who is engaged in an attorney/client relationship with the inmate addressee. All correspondence to attorneys must be clearly marked with the attorney's full name, or the full name and address of the law firm, printed on the envelope for it to be considered privileged.

2. Incoming Sealed Privileged Correspondence: Mail from the court or an inmate's attorney that has been sealed pursuant to **37 Pa. Code § 93.2** and in accordance with the procedures set forth in **Section VI.B.2.** of this policy.

### O. Prurient

Obsessively interested in sexual matters; marked by an obsessive interest in sex; arousing or appealing to an obsessive interest in sex.

### P. Public Mail Systems

The United States Postal Service and private carriers who serve the public with systems to move pieces of mail from one location to another.

### Q. Publications

Printed material that is circulated among the public for conveying information. This includes newspapers, magazines, hardcover or paperback books, pamphlets and newsletters, regardless of Postal Rate, that are not specifically intended for the purpose of advertising or selling merchandise.

### R. Storage Space

Inmates in general population shall be permitted storage space equal to four records center boxes. This space may be made up of the four records center boxes or one footlocker and two record center boxes. In cells that have a built-in, or a free standing storage cabinet, the inmate is permitted to use that space and either two records center boxes **or** one footlocker.

Inmates in Disciplinary Custody status shall be permitted storage space in accordance with Department policy **DC-ADM 801, "Inmate Discipline."** Inmates in Administrative Custody status shall be permitted storage space in accordance with Department policy **DC-ADM 802, "Administrative Custody Procedures."** Capital Case inmates shall be permitted storage space in accordance with Department policy **6.5.8, "Capital Case Administration."**

### S. Undeliverable Mail

Mail that cannot be identified for delivery due to incomplete or incorrect information.

## V. POLICY

It is the policy of the Department to provide inmates access to communication with members of society through the established public mail system, to inspect mail, determine the types of publications allowed, and to review publications intended for inmates.[2] Restrictions shall be related directly to facility order and security, public safety, and obscenity laws and statutes.[3]

## VI. PROCEDURES

### A. Mail Privileges

1. Inmates shall be permitted to correspond with the general public, their attorneys, and public officials.

2. There shall be no limit to the number of correspondents to whom an inmate may send or from whom an inmate may receive mail.[4]

3. Inmates are prohibited from:

   a. corresponding with inmates, former inmates, parolees, probationers, co-defendants, or victims of the inmates' criminal acts except with the written approval of the Facility Manager;

   b. transferring or receiving through any means whatsoever, negotiable instruments, money, or items of monetary value to or from any other inmate, former inmates, parolees, probationers, co-defendants, or victims of the inmates' criminal acts or their immediate families without prior written approval of the Facility Manager;

   c. corresponding with current or former employees, current or former volunteers, or current or former contract employees except with the written approval of the Facility Manager;

---

[2] 1-ABC-5D-04, 1-ABC-5D-07
[3] 3-4429, ACI 3-4432, 1-ABC-5D-02
[4] 3-4430

   d. sending or receiving correspondence containing threatening or obscene materials, as well as correspondence containing criminal solicitations or furthering a criminal plan or misconduct offense;

   e. using the facility address to fraudulently identify him/herself as an employee, agent or representative of the facility; For example:

> Theodore Smith, Paralegal
> SCI Mahanoy
> 301 Morea Road
> Frackville PA 17932

   f. writing to individuals who have informed the Department, in writing, that they do not wish to receive correspondence from the inmate. This restriction is not to be interpreted to infringe on the right of inmates to correspond with public officials with regard to the performance of their official duty;

   g. corresponding with prohibited parties directed through a third party;

   h. sending or receiving battery-operated greeting cards;

   i. sending or receiving "bill-me-later" or free gift transactions; and

   j. receiving correspondence or homemade artwork in correspondence that has any item affixed to it (excluding mailing labels) with glue or other types of adhesives, including tape. Unaltered commercially manufactured greeting cards, other than battery operated greeting cards, will be permitted.

4. Each inmate will be permitted, without cost, to mail 10 one-ounce, first-class letters per month.[5]

5. There will be no limit on the number of letters that an inmate may send at his/her own expense.[6] Envelopes are available for purchase through Commissary. In the event an inmate has purchased envelopes prior to a transfer to another facility, the inmate shall be allowed a one-on-one exchange of envelopes upon arrival at the new facility.

6. No obscene material or contraband shall be written or drawn on, or contained in, the mail. Such mail will be opened, returned to the sender, or disposed of at the inmate's expense.

7. Outgoing, non-privileged correspondence may be opened and inspected if there is reason to believe that the security of the facility may be impaired or this directive is being violated.[7]

---

[5] 3-4431, 1-ABC-5D-03
[6] 1-ABC-5D-02
[7] 1-ABC-5D-05

8. All outgoing mail shall include on the envelope the full-approved inmate name, DOC inmate number, and return address printed in a legible, undisguised manner on the upper, left-hand corner of the envelope. Envelopes not bearing this information will be opened and returned to the inmate if identified.

9. All outgoing correspondence will be stamped "**Inmate Mail - PA. DEPT. OF CORRECTIONS.**"

10. Inmates shall seal and place all outgoing correspondence in the collection boxes provided in each housing unit and/or other designated locations.

11. All inmates are prohibited from receiving nude photographs.

12. In accordance with **18 Pa. C.S.A. § 5903**, the Department will not disseminate obscene or explicit sexual materials to inmates under the age of 18. Any inmate under the age of 18 found to be in possession of explicit sexual materials will be subject to a misconduct in accordance with **DC-ADM 801, "Inmate Discipline."**

## B. Privileged Correspondence

1. Outgoing Privileged Correspondence: In order to be treated as outgoing privileged correspondence, the inmate's approved name and DOC number shall be printed in a legible, undisguised manner on the upper, left-hand corner of the envelope. The letter must be addressed to a specific attorney, law firm or elected or appointed federal, state, or local official as specified in the definition of "Outgoing Privileged Correspondence." **(See Section IV.N.1.)**

2. Incoming Privileged Correspondence: Mail from the court or an inmate's attorney will be handled as outlined in **Subsection VI.B.2.a.** or **VI.B.2.b.** below.

   a. Sealed Privileged Mail

      (1) An attorney or authorized representative/designee may hand-deliver a sealed confidential client communication to one of the facilities listed in **Attachment A, Department of Corrections Facilities**, if the attorney is unable to communicate through alternative means.

      (2) The person making the delivery must do so during normal business hours unless granted permission in advance by the Secretary or the Facility Manager designee.

      (3) The person making the delivery shall provide valid identification and information sufficient to verify that the person is the inmate's attorney or authorized representative of the attorney.

      (4) The person making delivery shall present the documents for inspection for contraband. The documents must be unsealed and unbound when presented to allow for search. They must be presented in an envelope on which sufficient postage has been affixed, unless the delivery is made at the facility at which the inmate is housed.

(5)    A log (**Attachment B, Incoming Privileged Mail Receipt Log**) will be maintained of the name of the person who delivered the mail, name of the staff member who received the mail, the form of identification presented, a description of the document presented for inspection, the number of pages and the date that it was placed in the U.S. mail.

(6)    The documents will be searched, but not read. They will then be sealed in an envelope in the presence of the person submitting the documents and the person will sign the envelope over the seal. The envelope will be marked with a Department "Privileged Correspondence Stamp" that indicates that Department staff has searched it and that it shall be opened in the presence of the inmate.

(7)    The envelope will then be placed in the U.S. mail, within 24 hours of receipt, by the staff member who searched and sealed the envelope unless either the delivery is made at the facility at which the inmate is housed or prior arrangements for alternate delivery are made with the Facility Manager at the facility accepting the documents.

(8)    Upon receipt at the facility where the inmate is housed, the envelope will be unsealed and searched again for contraband in the presence of the inmate.

(9)    A court may direct delivery of court documents sealed from public disclosure to an inmate by specific order. The court's representative shall deliver the sealed documents and the specific court order to a facility listed in **Attachment A, Department of Corrections Facilities,** and the document will be processed as set forth for attorney mail above. Under no circumstances will documents filed in a court of public record be delivered sealed to an inmate.

b.    Attorney Control Number

(1)    An attorney, may seek advance permission from the Department's Office of Chief Counsel to use an attorney control number. If a number is obtained and used as set forth below, mail from attorneys using the number will be opened in the presence of the inmate.

(2)    An attorney seeking a control number shall send a letter via facsimile to number 717-975-2217 to the attention of Office of Chief Counsel, Attorney Control Number Request. The letter shall request an attorney control number and shall include the attorney's name, address, telephone and facsimile numbers as well as his/her state attorney identification number. The letter shall also contain a verification subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsification to authorities that all mail he or she sends to inmates using the control number will contain only essential, confidential, attorney-client communication and will contain no contraband.

(3)    Within one business day of receipt of the facsimile, the Office of Chief Counsel will provide the attorney with a control number that would be

applicable to all mail sent from that attorney to Department inmates. This will be a confidential number that will not be revealed to inmates.

(4)   A law firm or other law office that has more than one attorney who corresponds with inmates may request a single control number for the entire office. The office must designate one person to be responsible to check all mail to inmates for contraband and to be sure that it only contains essential, confidential, attorney-client communication. The name of that person must be identified in the letter seeking the attorney control number. The Department shall be notified if a different person is substituted.

(5)   The attorney shall place the control number on each envelope to be mailed to an inmate that the attorney wishes to have opened in the inmate's presence. This number is to be placed only on the envelope and not placed on any of the pages of the documents.

(6)   Mail room staff will cross out the attorney control number with a permanent marker or other method prior to the envelope being sent to the inmate's housing location for delivery to the inmate.

(7)   If the procedures set forth in **Section VI.B.2.b.(1) through (6)** above are followed, mail will be opened for the first time in the presence of the inmate. If a control number does not appear on the envelope, the mail will be treated as regular mail and opened in the mailroom unless the procedures set forth in paragraphs **Section VI.B.2.a.** were followed.

(8)   The Department may change the attorney control number for any reason upon notice to the attorney who requested it.

(9)   If, upon opening the envelope in the presence of the inmate, the staff member without reading the contents notices that the contents contain absolutely no legal material (e.g., contains only a publication readily available to the public with no handwritten notations from counsel), the staff member will issue the contents to the inmate and complete a **DC-121 Part 3, Employee Report of Incident,** in accordance with Department policy **6.3.1, "Facility Security"** for submittal to the Shift Commander and the Facility Manager. This report shall include: what contents were deemed not to be legal material; the name and DOC number of the inmate who received the mail; and the name and address of the attorney who sent the mail. The Facility Manager/designee shall forward a copy of the staff member's report to the Office of Chief Counsel and the Bureau of Standards, Practices, and Security for review and tracking.

## C. Stationery, Pen, and Postage for Indigent Inmates

Upon written request, indigent inmates shall be provided with stationery and a pen, and will be able to anticipate the cost for postage to file papers necessary to the good-faith pursuit of legal remedies.[8]

---

[8] 3-4262, 3-4264, 1-ABC-5D-06

1. No-Cost Stationary and Pens

   a. An inmate who needs no-cost stationery may submit a request to the Facility Business Manager or designee. The request shall contain:

      (1) the date of the request;

      (2) the approximate quantity of paper needed to prepare the legal documents;

      (3) whether a pen or the use of a pen is needed;

      (4) the current balance in his or her inmate facility account, if known; and

      (5) the case/docket number, type of case, and location of filing.

   b. The Business Manager/designee shall review the information contained in the request slip and verify that the inmate has insufficient funds to purchase the needed material. This determination will be based on the definition of "Indigent Inmate" in **Section IV.I.** of this policy.

   c. The Business Manager/designee shall respond to the request within five working days of receipt.

   d. Upon approval, the inmate shall be provided free of charge:

      (1) the use or permanent possession of a common type of stick ball pen; and

      (2) a packet of fifty sheets of clean paper and five sheets of carbon paper. Paper must be 8 1/2 x 11 inches in size. Should the quantity of paper or carbon paper provided prove to be insufficient, the inmate may submit a request for one more additional packet per month.

2. Postage

   a. Anticipated Postage

      (1) An indigent inmate, who must immediately file a legal document with a court, shall be permitted to anticipate the deposit of funds into his/her account to mail legal documents to a court, attorney, or party to a lawsuit by sending a request to the Business Manager/designee and anticipating on his/her account for the cost of mailing such documents.

      (2) The Business Manager/designee shall respond to the request within five working days of receipt.

      (3) An inmate may anticipate on his/her account for legal mail up to $10.00 per month. Under no circumstances, shall the Business Manager/designee approve requests in excess of $10.00 per month.

     (4)  After all court-ordered deductions are taken in accordance with Department policy **DC-ADM 005, "Collection of Inmate Debts,"** one hundred percent (100%) of any monies received in an inmate's account will be used to satisfy the postage debt.

  b.  Postage Limitations

An inmate will be permitted to anticipate the deposit of funds into his/her account for regular first-class postage only except that:

    (1)  a "Petition for Review" to Respondents is the only legal document required to be served by <u>certified mail, return receipt</u>;

    (2)  an inmate may use, but is not required to use, <u>certified mail, return receipt</u> to file and serve a "Petition for Review" with the Court;

    (3)  an inmate may not be permitted to anticipate the deposit of funds into his/her account to mail documents in any case in which he/she is not a party;

    (4)  any misuse of postage and incomplete or false requests shall be grounds for disapproval of any further anticipation for postage and for discipline; and

    (5)  The inmate may appeal any decision regarding this section as outlined in Department policy **DC-ADM 804, "Inmate Grievances."**

## D. Security

### 1. Incoming Correspondence

  a.  The facility's mailroom staff shall open and inspect all incoming correspondence unless it is incoming privileged correspondence that will be processed as set forth in **Section VI.B.2** above and opened in the presence of the inmate.

  b.  Any item or material in incoming correspondence (e.g., internet pages, news articles, etc.) that is questionable in nature, shall be reviewed by the Incoming Publications Review Committee for possible violations of **Section VI.F.3.a.** and/or **Section VI.F.3.b.** of this policy.

  c.  Incoming correspondence, other than privileged correspondence, may be read upon the written order of the Facility Manager and reproduced upon written order of the respective Deputy Secretary only when there is reason to believe that the security of the facility may be threatened, that this directive is being violated, or there is evidence of criminal activity or of a misconduct offense.

### 2. Outgoing Privileged Correspondence

  a.  Outgoing privileged correspondence will not be opened, read, censored, or reproduced outside the presence of the inmate, except under the following conditions:

   (1)  with the prior written approval of the Secretary of Corrections or designee. A request for approval to open, read, censor, or reproduce privileged correspondence outside the presence of the inmate must be made in writing to the Secretary and must state the reason for the request; and

   (2)  permission will be granted only when there is reason to believe the correspondence may reveal or discuss planned or future criminal activity including but not limited to the following:

      (a)  any information relating to a possible escape;

      (b)  the introduction of weapons, drugs, money, or other contraband that presents a clear threat to the security of the facility;

      (c)  Any information relating to a possible prison disturbance or other activity that presents a clear threat to the security of the facility; and

      (d)  any information relating to other criminal activity. Specifics of suspected activity must be provided.

  b.  A log will be kept of instances where mail is read, and the inmate will be notified unless such notification would impede an investigation of misconduct or suspected criminal activity. The inmate will be notified that his/her mail was read at the completion of the investigation.

**E. Handling and Distribution of Mail**

  1.  Outgoing mail placed in the housing unit collection boxes or other designated locations will be collected each day, Monday through Friday. A reasonable effort will be made to ensure that such mail is delivered to the US Postal Service on the same day.

  2.  Incoming mail, including packages, will be processed daily (excluding weekends and state/federal holidays) as follows: [9]

    a.  The facility will not accept any mail that has postage due.

    b.  All inmate mail will be checked against the inmate roster.

    c.  If an inmate has been transferred or released, mail will be forwarded, unopened, to the new address, if known, for 60 days.[10] If no forwarding address is available, mail will be returned, unopened, to the sender. It is the responsibility of the inmate to notify correspondents and publishers of a change of address.

    d.  If an inmate elects to have mail held by the mailroom while on furlough or an Authorized Temporary Absence (ATA), a formal notification, in writing, may be

---

[9] 3-4437, 1-ABC-5D-09
[10] 3-4438, 1-ABC-5D-10

required by the facility, and appropriate procedures will be established by the facility.

e. Each facility will develop local procedure to ensure that incoming privileged correspondence is opened and inspected in the presence of the inmate. All remaining mail will then be opened, inspected and distributed to the inmate.

f. All incoming mail will be delivered to the inmate within twenty-four hours and packages will be held no more than forty-eight hours, excluding weekends and holidays.[11]

g. Any inmate who receives letters of a disturbing nature should bring the matter to the attention of the housing unit officer and make arrangements to discuss the problem with his/her unit manager or counselor.

3. Incoming mail will be opened and inspected for contraband in the facility's mail room.[12] Money orders and certified checks will be recorded, indicating the nature of the receipt, the sender, the amount received, and the date.[13] A **DC-130B, Cash Transaction Receipt** will be issued to the inmate for all amounts received. The money orders and/or certified checks will be forwarded to the facility Business Manager who will deposit the money into the inmate's account.

4. The facility **will not accept** personal checks or cash sent through the mail. If a personal check or cash is discovered during an inspection for contraband, the entire piece of mail is to be returned to the sender with a notice that it is being returned because of non-permitted contents.

5. All incoming mail must include the approved inmate name and DOC number.

6. If incoming correspondence is determined to be undeliverable for any reason other than those stated in **Section VI.A.3.**, it will be marked appropriately and returned to sender at the inmate's expense or otherwise disposed of.

7. Incoming mail containing contraband will be confiscated and held for further inspection and disposition. The contraband will be returned to the sender (if known), or it will be destroyed.

8. All correspondence which is read in accordance with this directive and appears to be in violation of **Section VI.A.3.** will be handled as follows:

a. the Deputy Superintendent for Facilities Management or designee will review correspondence and will notify the inmate and the sender that the letter is rejected;

b. the correspondence may be held for at least seven working days after notification is sent, to permit reasonable opportunity to appeal the decision. The

[11] 3-4437
[12] 3-4433; 3-4436; 1-ABC-5D-08
[13] 3-4435; 1-ABC-5D-07

Facility Manager will respond to all appeals and make a final decision as to whether the correspondence shall be rejected; and

c. An inmate who violates this directive will not lose basic correspondence privileges. However, violations may result in the monitoring of mail until such time as it is determined that further violations will not occur. Any violation of this directive may result in misconduct charges being filed.

9. Presorted Standard Mail

Most magazines and newspapers are sent in by Presorted Standard Mail. Since the inmate has a paid subscription for magazines and newspapers, they are to be permitted.

10. Certified or Registered Mail

a. Each facility will establish procedures in cooperation with the local Postmaster for the processing of certified and registered mail.

b. Determination of mail to be sent by these methods will be the responsibility of the inmate.

c. Except as provided in **Section VI.C.,** the inmate must have funds available in his/her account and an approved cash slip for such postage payment in order to send mail certified or registered.

11. Inmate Organization Correspondence

a. Only approved inmate organizations as defined by Department policy **7.8.1, "Inmate Recreational and Therapeutic Activities"** may send and receive mail.

b. Payment of postage is the responsibility of the inmate organization.

c. All incoming and outgoing inmate organization correspondence must be reviewed and approved by the facility staff coordinator for the organization.

d. All outgoing correspondence must be reviewed by the staff coordinator for the organization to ensure compliance with Department policies.

e. Outgoing correspondence must be sealed and delivered to the mailroom by the staff coordinator.

F. **Incoming Publications**

1. General Procedures

a. All publications must be received from the original source.    Covers of hardbound publications may be damaged through examination or removed

where inspection of the cover is deemed necessary and no reasonably-available alternative form of inspection is adequate.

b. Magazines must be mailed directly from the original source. Single copies of small letter-sized pamphlets may be received in regular correspondence from family members, friends, or religious advisors.

c. Newspapers may be mailed or delivered to the facility.

d. Publications, new or used, that are sent directly from a publisher, bookstore, book club, distributor, or department store will usually be deemed to have come from the original source.

e. Newsletters and other mail from recognized non-profit religious and charitable organizations, when addressed to an individual inmate shall be delivered to the inmate even if mailed at less than first or second-class mail rates (i.e., Presorted Standard Mail rate).

f. If a publication contains questionable content, mailroom personnel, education staff, or the librarian will be responsible for forwarding these publications to the Incoming Publication Review Committee (IPRC).

g. If a publication contains a free sample item (e.g., lotion, perfume sample, etc.), the Facility Manager/designee shall review the item to determine if it will be permitted into the facility. If it is determined that the item is not to be permitted into the facility, it is to be removed from the publication and the publication is to be delivered to the inmate.

h. An inmate may receive more than one copy of any publication only with special approval of the IPRC.

i. Upon transfer, publications approved at one facility will not necessarily be permitted in another facility. The IPRC at the receiving facility will review any publications that are deemed questionable.

j. Upon receipt of mail sent at less than First or Second Class Rate, the mail inspector will verify that the stamp specifically states "Presorted Standard Mail" and if the words "Presorted Standard Mail" are not printed on the mail, it will be processed as incoming mail.

k. However, if the words "Presorted Standard Mail" are marked on the item, the mail inspector will determine if the item meets the definition of a publication as defined in **Section IV.Q**. If the criteria for a publication are met, it will be accepted and processed in accordance with **Sections, VI.E. and F,** regardless of the postal rate at which it was mailed. If the item has a Presorted Standard Mail Stamp, but does not meet the criteria for a publication, delivery will be refused.

2. Review Process

   a. The IPRC will determine whether written or printed material is a publication within ten days after the material is received.

   b. Each issue of a publication will be reviewed individually. No publication will be banned without review unless it appears on the monthly circulated banned list. Any publication that contains one or more sections dealing with prohibited topics must be disapproved in its entirety. If a publication is disapproved because of a section(s) dealing with prohibited topics, facility staff or the original source may not alter the publication by removing the prohibited section(s) in an attempt to make the publication acceptable. The publication must remain in its original format.

   c. The content will be reviewed against the criteria listed in **Sections VI.F.3.a. and b.** below.

   d. Publications that are extensively circulated throughout the general public will not be excluded for the sole reason that they contain sexually-explicit materials; however, they may be excluded if they contain materials prohibited by the criteria guidelines.

   e. The committee will communicate its decision to the inmate and copy the Facility Manager.

   f. If a publication is disapproved the reason(s) will be included.

   g. No publication shall be prohibited solely on the basis that the publication is critical of penal facilities in general, of a particular facility, of a particular facility staff member, of an official of the Department or of a correctional or penological practice in this or in any other jurisdiction.

3. Criteria

   Requests for and receipt of publications may be disapproved when the publications contain the following:[14]

   a. Security Issues

      (1) information regarding the manufacture of explosives, incendiaries, weapons, escape devices or other contraband;

      (2) instruction regarding the ingredients or manufacture of poisons, drugs, or intoxicating beverages;

      (3) writings which advocate violence, insurrection or guerrilla warfare against the government or any of its facilities or which create a danger within the context of the correctional facility;

---

[14] 1-ABC-5D-04

    (4)   writings that advocate, assist or are evidence of criminal activity or facility misconduct;

    (5)   racially inflammatory material or material that could cause a threat to the inmates, staff, and security of the facility will be prohibited entrance into the facility;

    (6)   maps, road atlas, etc. that depict a geographic region;

    (7)   non-privileged mail containing official documents (i.e., driver's license, birth certificate, welfare card, medical cards, etc.). These documents will be confiscated and placed in the designated safe. The correspondence only will be forwarded to the inmate; and

    (8)   the above criteria should not be interpreted so broadly as to require disapproval of recognized textbooks in chemistry, physics or the social sciences.

b. Obscenity Issues

The following categories of material are considered "obscene":

    (1)   where one of the participants in the act is, or appears to be, non-consenting;

    (2)   where one of the participants appears to be forceful, threatening, or violent;

    (3)   where one of the participants is dominating one of the other participants and one of the individuals is obviously in a submissive role or one of the participants is degraded, humiliated, or willingly engages in behavior that is degrading or humiliating;

    (4)   one of the participants is a child/minor, or appears to be a child/minor;

    (5)   where there is actual penetration, be it penile/vaginal-oral, penile-anal, or penile-vaginal; digital-anal, digital-vaginal; or insertion of any inanimate object in a body cavity, or the depiction in the context presented is deemed to be opposed to legitimate penological objectives;

    (6)   where any bodily excretory function is depicted;

    (7)   where the material depicts bestiality, sadomasochistic behavior, or bondage; and/or

    (8)   materials that depict or expressly encourages violent or assaultive sexual conduct, or involuntary deviant sexual contact.

4. Appeal Process

   a. Inmates shall have the right to appeal a decision that results in the disapproval of a publication in accordance with Department policy **DC-ADM 804**.

   b. If the decision is appealed, the mailroom officer will hold all questionable publications until the appeal process is completed.

   c. The publication will be forwarded to the mailroom officer for final processing.

   d. If the inmate chooses not to appeal, a cash slip should be sent to the mailroom in order to mail the publication out. If the inmate refuses to submit a cash slip within fifteen days of the decision, the publication will be destroyed.

5. Denied Publication Listing

   a. By the fifteenth of each month, the IPRC from each facility will forward a list of publications that were disapproved at their facilities for that month and the justification for denial, to the Executive Assistant to the Secretary/designee at Central Office.

   b. The Executive Assistant to the Secretary/designee will compile a monthly list of all publications denied and, upon completion, distribute the list to the IPRC at each facility.

   c. All publications on the denied publications list will be denied at all facilities.

   d. In the event that the decision to deny a publication is reversed via the appeal process, the Executive Assistant to the Secretary/designee shall notify the IPRC at each facility that the publication is to be permitted.

6. Possessions of Publications

   a. Each inmate in general population is permitted to retain the following quantity of publications in his/her cell:

      (1) three newspapers;

      (2) 10 magazines; and

      (3) 10 books (school books or otherwise), unless additional books are approved by the facility's education department.

   b. Inmates in Administrative Custody, Disciplinary Custody and/or a Special Management Unit will be allowed to retain quantities of written materials as outlined by the respective Department policies on those subjects.

## VII. SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary, or designee may suspend any provision or section of this policy, for a specific period.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## IX. RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

#### 1. Policy

This policy document is public information and may be released upon request.

#### 2. Procedure Manual (if applicable)

The procedure manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee. This manual or parts thereof, may be released to any Department of Corrections' employee on an as needed basis.

### B. Distribution of Policy

#### 1. General Distribution

The Department of Corrections' policy and procedure manuals (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

#### 2. Distribution to Staff

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X.    SUPERSEDED POLICY AND CROSS REFERENCE

### A. Superseded Policy

1. Department Policy

   This document supersedes the following documents:

   a. DC-ADM 803, Inmate Mail Privileges issued January 22, 2001 by former Secretary Martin F. Horn.
   b. DC-ADM 803-1, Inmate Mail Privileges issued June 11, 2001 by Secretary Jeffrey A. Beard, Ph.D.
   c. DC-ADM 803-2, Inmate Mail Privileges issued October 24, 2001 by Secretary Jeffrey A. Beard, Ph.D.

2. Facility Policy and Procedures

   This document supersedes all facility policy and procedures on this subject.

### B. Cross Reference(s)

1. Administrative Manuals

   a. DC-ADM 005, Collection of Inmate Debts
   b. DC-ADM 801, Inmate Discipline
   c. DC-ADM 802, Administrative Custody Procedures
   d. DC-ADM 804, Inmate Grievances
   e. 6.3.1, Facility Security
   f. 6.5.8, Capital Case Administration
   g. 7.8.1, Inmate Recreational and Therapeutic Activities
   h. 11.5.1, Records Office Operations

2. ACA Standards

   a. Administration of Correctional Agencies: 2-CO-5D-01
   b. Adult Correctional Institutions: 3-4262, 3-4264, 3-4434, 3-4429, 3-4430, 3-4431, 3-4432, 3-4433, 3-4435, 3-4436, 3-4437, 3-4438
   c. Adult Community Residential Services: None
   d. Adult Correctional Boot Camp Programs: 1-ABC-5D-01, 1-ABC-5D-02, 1-ABC-5D-03, 1-ABC-5D-04, 1-ABC-5D-05, 1-ABC-5D-06, 1-ABC-5D-07, 1-ABC-5D-08, 1-ABC-5D-09, 1-ABC-5D-10
   e. Correctional Training Academies: None

## Department of Corrections Facilities

### State Correctional Institutions – State Regional Correctional Facility – Motivational Boot Camp

SCI Albion
10745 Route 18
Albion, PA 16475-0001
Telephone: (814) 756-5778

SCI Cambridge Springs
451 Fullerton Avenue
Cambridge Springs, PA 16403-1238
Telephone: (814) 398-5400

SCI Camp Hill
2500 Lisburn Road
P.O. Box 8837
Camp Hill, PA 17001-8837
Telephone: (717) 737-4531

SCI Chester
500 East Fourth Street
Chester, PA 19013-4551
Telephone: (610) 490-5412

SCI Coal Township
1 Kelley Drive
Coal Township, PA 17866-1020
Telephone: (570) 644-7890

SCI Cresson
P.O. Box A Old Route 22
Cresson, PA 16699-0001
Telephone: (814) 886-8181

SCI Dallas
1000 Follies Road
Dallas, PA 18612-0286
Telephone: (570) 675-1101

SCI Frackville
1111 Altamont Boulevard
Frackville, PA 17931-2699
Telephone: (570) 874-4516

SCI Graterford
P.O. Box 246 Route 29
Graterford, PA 19426-0246
Telephone: (610) 489-4151

SCI Greene
169 Progress Drive
Waynesburg, PA 15370-8082
Telephone: (724) 852-2902

SCI Greensburg
R.R. Box 10
Route 119 South
Greensburg, PA 15601-8999
Telephone: (724) 837-4397

SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698-1000
Telephone: (814) 378-1000

SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112
Telephone: (814) 643-2400

SCI Laurel Highlands
5705 Glades Pike
P.O. Box 631
Somerset, PA 15501-0631
Telephone: (814) 445-6501

SCI Mahanoy
301 Morea Road
Frackville, PA 17932-0001
Telephone: (570) 773-2158

SRCF Mercer
801 Butler Pike
Mercer, PA 16137-9651
Telephone: (724) 662-1837

SCI Muncy
P.O. Box 180 Route 405
Muncy, PA 17756-0180
Telephone: (570) 546-3171

SCI Pine Grove
189 Fyock Road
Indiana, PA 15701-6542
Telephone: (724) 465-9630

SCI Pittsburgh
P.O. Box 99901
Pittsburgh, PA 15233-0901
Telephone: (412) 761-1955

Quehanna Motivational Boot Camp
HC Box 32
Karthaus, PA 16845-0032
Telephone: (814) 263-4125

SCI Retreat
660 State Route 11
Hunlock Creek, PA 18621-3136
Telephone (570) 735-8754

SCI Rockview
Box A
Bellefonte, PA 16823-0820
Telephone: (814) 355-4874

SCI Smithfield
P.O. Box 999
Huntingdon, PA 16652-0999
Telephone: (814) 643-6520

SCI Somerset
1590 Walters Mill Road
Somerset, PA 15510-0001
Telephone: (814) 443-8100

SCI Waymart
P.O. Box 256 Route 6
Waymart, PA 18473-0256
Telephone: (570) 488-5811

SCI Waynesburg
373 Prison Road
Waynesburg, PA 15370-8020
Telephone: (724) 627-6185

## Community Corrections Centers

### Region I

**REGIONAL OFFICE**
1355 West Cheltenham Avenue
Elkins Park, PA  19027-3122
Telephone: (215) 560-1600

PHILADELPHIA CCC #2
407 North 8th Street
Philadelphia, PA  19123-3907
Telephone: (215) 560-3041

PHILADELPHIA CCC #3
219 East High Street
Philadelphia, PA  19144-1197
Telephone: (215) 560-4885

PHILADELPHIA CCC #4
1628-1630 North 15th Street
Philadelphia, PA  19121-3402
Telephone: (215) 560-5328

PHILADELPHIA CCC #5
1221-1223 Bainbridge Street
Philadelphia, PA  19147-1805
Telephone: (215) 560-4543

### Region II

REGIONAL OFFICE
1235 Elmerton Avenue
Harrisburg, PA  17110-9706
Telephone: (717) 787-8127

ALLENTOWN CCC
608-610 Hamilton Mall
Allentown, PA  18101-2104
Telephone: (610) 821-6741

HARRISBURG CCC
27 North Cameron Street
Harrisburg, PA  17101-2408
Telephone: (717) 787-4427

JOHNSTOWN CCC
301 Washington Street
Johnstown, PA  15901-1612
Telephone: (814) 533-2416

SCRANTON CCC
240 Adams Avenue
Scranton, PA  18503-1602
Telephone: (570) 963-4215

YORK CCC
317 West Market Street
York, PA  17401-1009
Telephone: (717) 771-4541

### Region III

REGIONAL OFFICE
1301 Beaver Avenue
Pittsburgh, PA  15233-2342
Telephone: (412) 565-5657

PITTSBURGH CCC #1
915 Ridge Avenue
Pittsburgh, PA  15212-6004
Telephone: (412) 322-6806

PITTSBURGH CCC #2
501 North Negley Avenue
Pittsburgh, PA  15206-2430
Telephone: (412) 565-5360

PITTSBURGH CCC #3
535 South Aiken Avenue
Pittsburgh, PA  15232-1532
Telephone: (412) 681-1202

ERIE CCC
423 West 8th Street
Erie, PA  16502-1336
Telephone: (814) 871-4281

SHARON CCC
300 West State Street
Sharon, PA  16146-1248
Telephone (724) 983-5135

| Incoming Privileged Mail Receipt Log | | | | | |
|---|---|---|---|---|---|
| Name of the Person Who Delivered the Mail | Form of Identification Presented by the Person Who Delivered the Mail | Name of the Staff Member Receiving the Mail | Document Description | Number of Pages of the Document | Date the Received Mail was placed in the U.S. Mail |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

*DC-ADM 803, Inmate Mail and Incoming Publications*                                                                 *Attachment B*

# EXHIBIT FF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CASSIUS CLAY, SR.,                    )
                                      )
                    Plaintiff,        )
                                      )   Civil Action No. 05-125E
          v.                          )   Judge Sean J. McLaughlin
                                      )   Mag. Judge Susan Paradise Baxter
TRACY REEVES, et al.,                 )
                                      )
                    Defendants.       )

### DECLARATION OF JACK LOUGHRY

I, Jack Loughry, declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1.     I am currently employed by the Pennsylvania Department of Corrections as the Business Manager at SCI-Laurel Highlands and SCI-Somerset. I served as the Business Manager at SCI-Greensburg from 1992 to March 2007.

2.     During my tenure as SCI-Greesburg's Business Manager, Inmate Clay frequently insisted that he should be advanced money for postage for legal filings.

3.     DC-ADM 803 governs the handling of inmate mail. It permits all inmates, regardless of financial status, to mail without cost 10 one-ounce first-class letters per month. (§VI(A)(4).) In addition, Section VI(C) allows inmates who are **indigent** to anticipate on their account up to $10 per month for legal mail and copying.

4.     To qualify as indigent for purposes of anticipating postage under DC-ADM 803, an inmate's combined balances in his accounts must be $10 or less at all times during the 30 days preceding the date on which he makes a request to be designated as indigent. DC-ADM 803 IV (H).

5.    To the best of my recollection, Inmate Clay never requested to be designated as indigent while at SCI-Greensburg. I also have reviewed a copy of his inmate account from March through November 2003 (Exhibit GG). This clearly shows that Inmate Clay did not have less than $10 in his account during any single 30-day period and thus, he would not have qualified for indigent status had he applied.

6.    Inmate Clay's account reflects an occasional negative balance when certain deductions occurred for matters such as medical co-pays, child support, commissary or cable TV. As to the medical co-pays, DOC Policy requires that inmates be permitted to anticipate funds and incur negative balances for such charges. (DC ADM 820.)[1] Other negative balances are inadvertent, however. Child support payments, unlike many other charges to inmate accounts which are automated (such as Act 84 charges), are entered manually, once per month. Although the computer system updates itself periodically during the day, an inmate may be able to incur commissary or other charges before his balance is updated in the computer to reflect the child support posting.

I declare under penalty of perjury that the foregoing is true and correct, per 28 U.S.C. § 1746.

Date:    _8-27-07_                    _Jack Loughry_

Jack Loughry

---

[1] "No inmate shall be refused a medical service for financial reasons. If an inmate lacks sufficient funds to pay the medical service fee, his/her account will be debited and the fee recouped in accordance with DC-ADM 005."