**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CASSIUS CLAY, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 05-125E** |
| **v.** | ) | **Judge Sean J. McLaughlin** |
| | ) | **Mag. Judge Susan Paradise Baxter** |
| **TRACY REEVES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**BRIEF IN SUPPORT OF SUPPLEMENTAL MOTION
FOR SUMMARY JUDGMENT**

AND NOW come the defendants, by their attorneys, Thomas W. Corbett Jr., Attorney General, Mary Friedline, Senior Deputy Attorney General, and Susan J. Forney, Chief Deputy Attorney General, Chief, Litigation Section, and pursuant to this Court's August 7, 2007 Order, submit the following Brief in Support of Their Supplemental Motion for Summary Judgment:

**STATEMENT OF THE CASE**

In its Report and Recommendation dated July 26, 2007, this Court recommended that defendants' partial motion for summary judgment be granted in part and denied in part. In particular, the Court dismissed plaintiff's claims regarding the erroneous payments from his institutional account and abstained from deciding the constitutional challenge to DC ADM-005 under the *Pullman* abstention doctrine. The Court then denied defendants' request for summary judgment on plaintiff's access to the courts claim, and noted that defendants failed to address the mail tampering claim.

Defendants sought leave to file a supplemental motion for summary judgment to address both the mail tampering claim and the access to courts claim as properly

characterized by the Court (i.e., did defendants deny plaintiff access to the courts by refusing to advance him monies for the costs of litigation when his institutional account was depleted).   (R&R at 7.)   By Order dated August 7, 2007, this Court granted defendants leave to file a supplemental motion on these issues.

### A.    Plaintiff's Access to Courts Claims

In his complaint, plaintiff alleges that SCI-Greensburg's Business Manager, Jack Loughry, denied him access to the courts by not allowing him to anticipate funds to pay for legal mail petitions, citing a 4/18/03 response to Grievance #49578.[1]   (Cplt. ¶26-27.) One such petition was a Petition for Review in the Commonwealth Court "that involves this Institution in taking out of my account monies for child support purposes." (Cplt. ¶ 29 and Exh. 4.)  Plaintiff contends that he did not have enough money to cover the certified mail costs for serving his Petition (see Exh. 4), and that Loughry influenced other defendants, including Gaydos (from the Accounting Department) and Benning (a warden), not to meet with him or accept personal service of the Petition for Review. Plaintiff states that this denied him access to the courts because his Petition for Review was subsequently dismissed.   (Cplt. ¶29-30 and Exh. 4 and 7.)

Plaintiff mentions a PCRA petition in his complaint as well.  Plaintiff contends that the Mail Room Supervisor, Candice Brimmer (along with Loughry), tried to thwart his efforts to access the courts on numerous occasions by not debiting his account to place postage on his petitions, including a PCRA petition which had to be mailed on 4/22/03.  (Cplt. ¶ 32-36.)  According to plaintiff, "this action by Mrs. Brimmer to delay my petition, by not placing postage on it, **almost denied** me access to the Court on this

---

[1] Plaintiff refers to Grievance #49578, which is actually #49518, attached to defendants' supplemental motion as Exhibit AA.

occasion, as the Clerk of Courts made enough copies of the single petition."   (Cplt. ¶

34.)   Clay also mentions a PCRA petition (presumably the same one) in his Exhibit 5 to

the complaint, which is his 4/15/03 request to Loughry to be permitted to anticipate the

deposit of funds into his account so that he could file a PCRA petition that "HAS" to be

mailed by 4/15/03 in order to be timely filed.  (Exh. 5.)   Plaintiff does not actually allege

in the complaint that he was unable to file a timely PCRA petition, although he does

suggest that in subsequent filings, stating that defendants denied him access to the

courts by failing to advance funds "to prosecute a timely petition for post-conviction

relief."  (See Doc. 42-1, Pltf's Brief in Support of Motion for Preliminary Injunction, p. 3.)

Although plaintiff seems to be holding Loughry chiefly responsible for denying

him the ability to anticipate postage for mailing his petitions, he also claims that Reeves

(another accounting department defendant) misconstrued his child support orders and

started the illegal deductions, leaving him without funds to copy petitions to Court, and

for service by certified mail, or first class postage, and filing fees.  (Cplt. ¶16.)

Finally, plaintiff asserts that Grievance Coordinator Mrs. Marhefka denied him

access to the courts on October 22, 2004 by not granting his request to have a video

conference hearing on a Family Court matter.  (Cplt. ¶ 39-41.)

### B.    Mail Tampering Claim

Plaintiff alleges that on 12/22/02, Mail Room Supervisor Brimmer returned mail

directed to plaintiff which contained a $150 money order, along with contraband (a

powerball ticket) and did not tell him.  (Cplt. ¶31.)  He claims that this money order was

never found or received by the original sender.  Id.  According to plaintiff, he filed

Grievance #41097 and this was the beginning of his mail being tampered with, which included not receiving court papers, privileged correspondence from courts not coming on time or not at all, his personal mail not getting to the place he mailed it and mail being copied and circulated throughout the prison.  Id.

## ARGUMENT

### I.    The Record Fails to Support a Claim for Denial of Access to the Courts

A.    *Plaintiff suffered no actual injury in the prosecution of his criminal appeal*

Under the First Amendment, prisoners are constitutionally entitled to meaningful access to the courts, free from governmental obstruction.  See Bounds v. Smith, 430 U.S. 817,  828 (1977).  However, in order to prevail on an access to courts claim, the plaintiff must show that he suffered 'actual injury' due to the interference with his right of access.  Booth v. King, 346 F.Supp.2d 751, 758 (E.D. Pa. 2004), citing Lewis v. Casey, 518 U.S. 343, 351 (1996) and Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997) (holding that interference with prisoner's mail did not violate his right of access to courts without a showing of actual injury).  See also, Banks v. Beard, 2006 WL 2192015 (W.D. Pa.) at 5-6 discussing Christopher v. Harbury, 536 U.S. 403 (2002) (if a case has been blocked from being brought to court it must also be shown to be non-frivolous for violation of the right of access).

The element of "actual injury" may "include a court dismissal of a complaint [or] an inability to even file a complaint."  Booth v. King, 346 F.Supp.2d at 758 (citing Lewis, 518 U.S. at 351.  Other examples include "missed court dates, missed filing deadlines, a denial of legal assistance to which he was entitled, or the loss of a case which he

4

should have won." See Fortes v. Harding, 19 F.Supp.2d 323, 327 (M.D.Pa. 1998).

Accordingly, when raising an access to the courts claim, a plaintiff must allege with

specificity the manner in which the inadequacies of the prison law library or legal

assistance, or the purported governmental interference, caused an actual injury to the

inmate, such as the "loss or rejection of a legal claim." See Oliver v. Fauver, 118 F.3d

175, 177 (3d Cir. 1997)(quoting Lewis, 518 U.S. at 351).

In the instant case, plaintiff alleges that defendants failed to advance him monies

for copies, postage, and filing when his account was depleted due to the deductions for

child support. If he is also suggesting that his PCRA petition was dismissed as

untimely, that would be false. First, plaintiff affirmatively states in the complaint that he

was "almost" denied him access to the courts regarding his PCRA petition. (Cplt. ¶34.)

More importantly, his criminal dockets reflect that plaintiff was able to file a timely PCRA

petition on April 22, 2003 that was summarily dismissed by the criminal court on the

basis of Pa. R. Crim. P. 907 on July 21, 2004.[2]   (Exh. AA.)

A summary dismissal under Pa. R. Crim. P. 907 is proper if there are no material

issues of disputed fact, there is no purpose for any further proceedings, and the

defendant is not entitled to relief as a matter of law.

"The judge is permitted, . . . to summarily dismiss a petition for post-conviction

collateral relief in certain limited cases. (. . .) If after . . . (thorough) review the judge

determines that the petition is patently frivolous and without support in the record, or

that the facts alleged would not, even if proven, entitle the defendant to relief, or that

---

[2] The court dockets show that the summary dismissal was appealed to the Superior Court, where it was
upheld. Allocatur was then denied by the Supreme Court of Pennsylvania.

there are no genuine issues of fact, the judge may dismiss the petition as provided herein."

Pa. 2 Crim. P. 907, <u>comment</u>.  The Pennsylvania courts have validated this disposition of plaintiff in PCHRA petition here.  In <u>Banks</u>, <u>supra</u>, the court found similarly that a denial of an access to the courts claim could not rest upon a comparably deficient claim for post-conviction relief in keeping with the holding in <u>Christopher v. Harbury</u>.  <u>Id.</u> The same principle applies here.

Even if there had been actual injury associated with the PCRA petition, plaintiff failed to exhaust his access to courts claim with respect to the PCRA petition.   He filed Grievance # 49518 on April 16, 2003, it was denied, and he failed to appeal it to the next level of review.  (Exh. BB – Grievance #49518 and Response, with Declaration of Tracey Pollock.)  The DC-ADM 804 grievance procedure applies to all state correctional institutions and requires three levels of review:  (1) initial review by the facility grievance coordinator; (2) appeal from the initial review to the Superintendent or Regional Director; and (3) final appeal to the Chief Hearing Examiner.  <u>See</u> <u>Ahmed v. Dragovich</u>, 297 F.3d 201, 204-205 (3d Cir. 2002); <u>Spruill v. Gillis</u>, 372 F.3d 218, 232 (3d Cir. 2004). Accordingly, exhaustion of administrative remedies under the DC-ADM 804 system requires a prisoner to present his claims at each level.  <u>Spruill</u>, 372 F.3d at 232 (discussing prisoner's exhaustion of grievance through "all stages" under DC-ADM 804).

The United States Supreme Court blessed <u>Spruill</u> in <u>Woodford v. Ngo</u>, ___ U.S. ___, 126 S.Ct. 2378 (June 22, 2006), holding that an untimely "or otherwise procedurally defective administrative grievance or appeal" does **not** satisfy the PLRA's exhaustion requirement.  <u>Woodford</u>, 126 S.Ct. at 2382.  According to the Court: "We

6

hold that proper exhaustion of administrative remedies is necessary." Id.  Proper

exhaustion "demands compliance with an agency's deadlines and other critical

procedural rules because no adjudicative system can function effectively without

imposing some orderly structure on the course of its proceedings." Id. at 2386.

Thus, plaintiff's failure to properly exhaust his access to courts claim based on

the filing of his PCRA petition prevents him from raising that claim here.


B.    *Plaintiff was not indigent and thus did not qualify under DOC Policy for
advancement of monies to serve his Petition for Review*

On September 10, 2003, plaintiff submitted a Petition for Review to the

Commonwealth Court which was docketed at No. 640 M.D. 2003 on September 25,

2003 (this was captioned as a Motion for Preliminary Injunction and TRO).  (Exh. CC.)

The named respondents, in addition to the DOC, were Jack Loughry, Gaydos from SCI-

Greensburg accounting, and Benning, the Facility Manager (all defendants here).

Plaintiff contended that they violated his constitutionally protected liberty interest and

due process rights in funds and gifts in his inmate account by, *inter alia*, deducting child

support obligations from those funds pursuant to DC-ADM 005.  (Exh. CC.)

Plaintiff is correct when he states that this petition was dismissed due to his

failure to effect proper service under Pa. RAP 1514.  (See Exh. DD – 11/7/03 and

12/22/03 Commonwealth Court Orders and Docket.)   Even so, plaintiff did not

necessarily suffer "actual injury" by that dismissal since he is raising the very same

issues in this case.  He was unable to proceed with his claim, but only in

Commonwealth Court.

However, even if one were to assume for purposes of argument that the Petition for Review dismissal was an actual injury, that is hardly the end of the analysis. Clearly, plaintiff lost his Commonwealth Court action because he failed to effect proper service of his petition. (Exh. DD.) The question then becomes whether there was a lack of funds in his account at the time service was to be made, and if so, whether the concept of meaningful access to the courts required DOC (or any of the individual defendants) to provide him with additional funds.

Meaningful access to the Courts does not require the DOC to provide inmates unlimited rights to free postage. Robus v. Commonwealth of PA, 2007 WL 853739, *2 (W.D. Pa. 3/20/7), citing Salkeld v. Tennis, 2006 WL 2794222, *2 (M.D. Pa. 2006) and Jones v. Wadsworth, 1986 WL 13306, *1 (E.D. Pa. 1986). Indeed, the DOC policy which governs inmate mail and advancement of monies for postage and copying, DC-ADM 803, has survived constitutional challenge on several occasions. Id. Significantly, this policy allows an inmate who is "indigent" to anticipate up to $10.00 on his account monthly for postage and copying for legal mail:

### C. Stationery, Pen, and Postage for Indigent Inmates

Upon written request, **indigent** inmates shall be provided with stationery and a pen, and **will be able to anticipate the cost for postage to file papers necessary to the good faith pursuit of legal remedies**.

*     *     *     *     *     *     *     *

2. Postage
   a. Anticipated Postage
      (1) An indigent inmate, who must immediately file a legal document with a court, shall be permitted to anticipate the deposit of funds into his/her account to mail legal documents to a court, attorney, or party to a lawsuit by sending a

request to the Business Manager/designee and anticipating on his/her account for the cost of mailing such documents.

(2) The Business Manager/designee shall respond to the request within five working days of receipt.

(3) An inmate may anticipate on his/her account for legal mail up to $10.00 per month. Under no circumstances shall the Business Manager/designee approve requests in excess of $10.00 per month.

(4) After all court-ordered deductions are taken in accordance with Department policy DC-ADM 005, "Collection of Inmate Debts," one hundred percent (100%) of any monies received in an inmate's account will be used to satisfy the postage debt.

b. Postage Limitations
An inmate will be permitted to anticipate the deposit of funds into his/her account for regular first-class postage only except that:

(1) a "Petition for Review" to Respondents is the only legal document required to be served <u>by certified mail, return receipt</u>;

(2) an inmate may use, but is not required to use, <u>certified mail, return receipt</u> to file a "Petition for Review" with the Court;

(3) an inmate may not be permitted to anticipate the deposit of funds into his/her account to mail documents in any case in which he/she is not a party;

(4) any misuse of postage and incomplete or false requests shall be grounds for disapproval of any further anticipation for postage and for discipline; and

(5) The inmate may appeal any decision regarding this section as outlined in Department policy DC-ADM 804, "Inmate Grievances."

(Exh. EE - DC-ADM 803, at Section VI, ¶ C (effective 9/30/02 through7/15/04).

(Emphasis added.)

An indigent inmate is defined under DC-ADM 803 as follows:

An inmate shall be deemed indigent if the combined balances of his/her facility account and any other accounts are $10.00 or less at all times during the 30 days preceding the date on which the inmate submits a request to a person designated by the Facility Manager.  Any inmate who refuses available work, although he/she is physically able and is not precluded from work by virtue of his/her housing status, is not indigent for the purposes of this policy and is not eligible for free stationery or to anticipate for postage.  Inmates who are self-confined may also be considered as refusing available work although physically able as determined by the Program Review Committee (PRC).  Any inmate who has funds in another account, which if deposited in his/her facility account would bring his/her balance to more than $10.00, is not indigent.  **Any inmate who has not made a good faith effort to manage his/her money so as to be able to pay the necessary costs of litigation himself/herself is not indigent**.

Exh. EE at Section IV, ¶ H. (Emphasis added.)

The undisputed record shows that Cassius Clay did not qualify as "indigent" under DC-ADM 803, particularly during the period when he needed to serve his Petition for Review (September through November 2003), nor did he ever apply for such status. (Exh. FF, Loughry Declaration.)   His inmate account for that period reveals that there was never a 30-day period where his account remained under $10.00.  (Exh. GG-Clay's Inmate Account.)[3]

The facts in <u>Salkeld,</u> where the Court rejected a similar challenge to DC-ADM 803, are nearly identical to those presented here.  On July 14, 2004, Salkeld was ordered by the Court of Common Pleas of Venango County to file a Concise Statement of Matters Complained of on Appeal within 14 days (he was appealing an order in a civil action.)  Salkeld claimed he did not learn of the Order until July 27, but prepared the statement and attempted to mail it from the prison that day.  It was returned the next

---

[3] Defendants have included copies of plaintiff's account from March and April 2003, when he claims to have had problems with his PCRA petition.  As stated above, there was no denial of access because the PCRA Petition was in fact filed.   But his account also demonstrates that Clay was not "indigent" at that time either.

day because he had insufficient funds in his inmate account to cover postage.  Id at *6.

On August 5, 2004, he received an Order from the Court waiving all issues regarding

his appeal due to his failure to submit the required statement.  Id.   His grievance was

denied as he was not indigent under DOC policy and thus, was not entitled to anticipate

postage.  Id.

In his federal action, Salkeld argued (as Clay does here) that the DOC violated

his constitutional rights by refusing to grant credit to his inmate account to mail

documents in a pending legal action, and that the Policy under which they denied him

credit (DC-ADM 803) was unconstitutional because it limited his access to the courts as

a non-indigent inmate.  Salkeld at *6-7.   In granting defendants' Motion to Dismiss, the

District Court noted that under DC-ADM 803, inmates generally can send and receive

mail without limit at their own expense, and even are permitted ten free first-class letters

per month.   Indigent inmates, moreover, are provided with free stationery and pens and

can "anticipate", or charge to their accounts against future credits, first-class postage up

to $10.00 per month, with limited exceptions for other types of postage (certified mail for

petitions for review being one of them).  Id at *7.

The Court went on to note that "indigence" is defined by DC-ADM 803 as

occurring when an inmate has no more than $10.00 in any account at all times during

the 30 days preceding the date on which he requests indigent status.  Id.   Further, the

policy states that if any inmate has not made a good faith effort to manage his money so

as to be able to pay the necessary costs of litigation, then he is not indigent.  Id.

In the 30 days prior to Salkeld's request to anticipate postage in early August

2004, he started with a negative balance of -$2.58 and ended with a negative balance

of -$15.05.  However, he was paid $38.28 in wages in that time frame (on July 9, 2004).

He was subject to a 30% Act 84 deduction which left him a balance of $24.21.  Then, on

July 13, 2004, he spent all but $.20 at the commissary.   He also paid his prison cable

TV bill of $15.25 on July 29, 2004, leaving him with a negative balance of -$15.05.

Thus, notwithstanding the beginning and ending negative balances, Salkeld was not

indigent under DC-ADM 803.

The Court found that Salkeld had indeed suffered actual injury because the

Common Pleas Court waived his issues for appeal due to his failure to comply with its

order.  Salkeld at *8.   However, the Court recognized that "the issue remains whether

the plaintiff's irreparable injury was the result of a constitutional deprivation."  Id.   The

Court concluded that "although states must provide indigent inmates with some sort of

free postage, neither indigent nor non-indigent inmates have a constitutional right to

unlimited free postage."  Salkeld at *8, citing Bounds v Smith, 430 U.S. 817, 821 (1977).

The DOC policy met constitutional requirements, according to the Court, because it did

not impede inmates from accessing the courts.  Id.[4]

According to the Salkeld Court, the reason Salkeld was not able to mail his

Concise Statement to the Court of Common Pleas was because "he was not

responsible, not because the defendants or the DOC policy impeded him":

He was employed and earned wages, yet he lacked the money for
postage because he spent his earnings at the commissary, and on cable
television.   The plaintiff did not qualify for indigent postage benefits, and it was,

---

[4] At footnote 2, the Court suggested that it was not necessary to reach the Turner v. Safely analysis,
noting plaintiff had failed to demonstrate a constitutionally protected interest because DC-ADM 803 did
not impinge his right of access to the court in the first place.  However, the Commonwealth Court in
Bronson v. Horn, 830 A.2d 1092, 1095 )Pa. Cmwlth. 2003) conducted such an analysis, applying the
factors set forth in Shaw v. Murphy, 532 U.S. 223 (2001), and concluded that DC-ADM 803, including its
$10.00 dollar restriction on postage for indigent inmates, passed constitutional muster.

therefore, his responsibility to ensure he had money for postage.    He did not and suffered the consequences of his failure.

Salkeld at *9.

The facts here are strikingly similar.    Neither the defendants nor any DOC policy impeded Clay's access to the Courts in 2003 when he was attempting to serve his petition for review (or his PCRA petition for that matter).    Rather, it was plaintiff's own irresponsible spending that put him in the position where he had no money left for postage.    As stated, Clay dated and submitted his petition on 9/10/03, and should have served it at that time.    He did not, and the Commonwealth Court, in response to preliminary objections challenging service, gave him another opportunity to effect proper service on the respondents and the Attorney General's office when it issued the November 7, 2003 Order.    During this entire time – between September and November 2003 -  Clay earned wages of $43.56 in September, $44.58 in October and $45.10 in November.    Although $24.00 was deducted each month for child support, this still left him with a balance each month that was close to $20.00, without factoring in gifts totaling $155.   (Exh. GG.)

Despite the foregoing, Clay claims he was unable to pay the certified mail postage required for serving the respondents, which initially should have been done when he filed the petition in September.    Still, Clay spent $43.70  at the commissary and paid $16.68 for cable service in September, for a total of $60.38.  (Exh. GG.)  He spent a total of $67.47 for commissary and cable in October, as well as sending a $50.00 gift to Cassius Clay Jr., and he spent $24.19 at the commissary in November. Id.

Indeed, the record reflects that when Clay submitted his Petition on September 10, 2003, he had $19.75 in his account (this was even **after** that month's child support deduction).  Yet, rather than paying for certified mail to serve his petition, Clay went to the commissary and spent $43.70.  (Exh. GG.)  Moreover, he received a gift of $150.00 on 9/23/03, which increased his balance at the end of the month at $92.47.  Id.  Still, he did not serve his petition.[5]

Thus, the Court's conclusions in Salkeld are particularly compelling here – Clay, like Salkeld, lacked money to serve his petition **because he spent his earnings and gift money at the commissary and on cable television.**   Clay was not indigent, and in any event, it was his responsibility to manage his money for postage in connection with his litigation.  With this record, he simply cannot suggest that defendants had an obligation under the constitution to provide him with more postage funds, or that any act or omission of the defendants caused the dismissal of his petition.   Clay bears full responsibility for that development.

C.    *Refusal to Permit Inmate Request for Video Conference without Court*
      *Order is not a Denial of Access to Courts_____*

As stated, plaintiff asserts that Grievance Coordinator Mrs. Marhefka denied him access to the courts on October 22, 2004 by not granting his request to have a video conference hearing on a Family Court matter.  (Cplt. ¶ 39-41.)  He attaches two request

---

[5] Inmate Clay's account reflects an occasional negative balance when certain deductions occurred for matters such as medical co-pays, child support, commissary or cable TV.   As to the medical co-pays, DOC Policy requires that inmates be permitted to anticipate funds and incur negative balances for such charges.  (DC ADM 820.) Other negative balances are inadvertent, however.  Child support payments, unlike many other charges to inmate accounts which are automated (such as Act 84 charges), are entered manually, once per month.  Although the computer system updates itself periodically during the day, an inmate may be able to incur commissary or other charges before his balance is updated in the computer to reflect the child support posting.  (Exh. FF – Loughry Declaration.)

slips to his complaint (Exh. 6) referring to the hearing "by video conferencing," which includes the counselor's response that Mrs. Marhefka "has no notification of any videoconference scheduled for you."

Attached to defendants' original Motion for Summary Judgment are various requests and petitions for modification of child support filed by plaintiff with the Allegheny County Court of Common Pleas in March, April and August of 2003. (See Doc. 73 - Deft. Exh's 11, 13-15.) The Family Court issued an Order dated August 24, 2004 in the matter at FD 86-4623 setting a hearing on plaintiff's Petition for Termination/Modification of Arrears for October 22, 2004. (Doc. 73 - Deft. Exh. 16.) The Order stated that Clay was permitted to appear by **telephone** but "he shall be responsible for making all arrangements for his telephone appearance at said hearing through the DOC" and shall notify the Title IV-D attorney of those arrangements at least 10 days prior to the hearing. (Id. - Exh. 16.) Defendants' Exh. 17 reflects that the hearing was apparently rescheduled to 2/25/05, at which point plaintiff is shown as participating by telephone. The Hearing Officer noted "consent" on both summaries and recommended that plaintiff pay arrears of $2.50 monthly on two of his child support obligations. (Id. - Exh. 17.)

First, plaintiff's request forms attached as Exhibit 6 to plaintiff's complaint do not reflect that Marhefka ignored a court order for a videoconference hearing. Nor is there any indication that plaintiff had provided Marhefka with the August 24, 2004 Court Order. (Doc. 73 - Deft. Exh. 16.) Even if he had, the Order simply stated that plaintiff could participate in the hearing by telephone. Id. And more importantly, the record

indicates that he did participate in the hearing, which clearly was continued until February 25, 2005.   (See Deft. Exh. 17.)

Of course, even if plaintiff had been unable to participate in a hearing on his petitions to modify or terminate arrears (which was not the case), the plaintiff's inability to attend a child support modification hearing by video conferencing does not satisfy the actual injury requirement for purposes of establishing denial of access to the courts. The Supreme Court has emphasized that the injury requirement "is not satisfied by just any type of frustrated legal claim."   Lewis v. Casey, 518 U.S. 343, 354-355 (1996). Rather, the obligation to provide access applies to inmate criminal appeals and civil rights actions.  Id;  see also Wolff v. McDonnell, 418 U.S. 539 (1974).  According to the Court in Lewis, inmates are not guaranteed "the wherewithal to transform themselves into litigating engines" under its prior decision in Bounds v. Smith.   Rather, the litigation tools required to be provided under the access to courts concept

> are those that the inmates need in order to attack their sentences,
> directly or collaterally, and in order to challenge the conditions of their
> confinement. **Impairment of any *other* litigating capacity is simply one
> of the incidental (and perfectly constitutional) consequences of
> conviction and incarceration.**  (Emphasis added)

Lewis, 518 U.S. at 355.

Above all, plaintiff failed to grieve this claim.   There is no grievance in his file pertaining to attendance at child support hearings or video conferencing.   (Exh. HH – Colland Declaration.)

> D.     *Defendants Gaydos, Miller, Marhefka, Benning, Wakefield and Burks have
>        no Personal Involvement with Plaintiff's Access to Courts Claim_____*

Other than the passing reference to Gaydos in paragraph 29, the allegations as to the accounting department defendants at SCI-Greensburg (Reeves, Miller and

Gaydos) are that they started making erroneous payments from his inmate account pursuant to the arrearage orders issued by the Court of Common Pleas around March 11, 2003.  (Cplt. ¶ 3, 5, 12-18.)  This Court has already dismissed this claim.  The focus of plaintiff's access to the courts claim is Loughry, and possibly Reeves in light of the allegation in paragraph 16.   The claim against Brimmer fails on its face, since he only suggests that she "almost denied" him access, and in any event the PCRA petition was filed.

The remaining allegations against Marhefka, Benning, Wakefield and Burks simply focus on their role in the grievance process, which is insufficient to establish personal involvement.   In a recent decision adjudicating allegations of similar "supervisory liability," the Eastern District held that liability is "unjustified" "[w]here the only role of supervisory prison officials in the alleged misconduct of their subordinates is the denial of plaintiff's administrative grievances and a concomitant failure to act to remedy the alleged misconduct."  Abuhouran v. Acker, 2005 U.S.Dist.LEXIS 12864, *19 (E.D.Pa. June 29, 2005), citing, Shehee v. Luttrell, 199 F.3d 295 (6th Cir. 1999).

Indeed, "prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights." Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa. 1997), aff'd 142 F.3d 430 (3d Cir. 1998) (Table), citing McGuire v. Foor, Civil Action No. 94-6884, 1996 WL 131130 at *1 (E.D.Pa. 1996), aff'd, 101 F.3d 691 (3d Cir. 1996).  A prisoner does not have a right to file a grievance.  See Wilson, 971 F.Supp. at 947, citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  Hence, as it has been found by the Third Circuit, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement (see

17

Rode, 845 F.2d 1195, 1208 (3d Cir. 1988); nor is concurrence in an administrative

appeal process (see Watkins v. Horn, 1997 WL 566080, *4 (E.D.Pa. 1997)), nor even

affirmation of a prison review committee decision (see Garfield v. Davis, 566 F.Supp.

1069, 1074 (E.D.Pa. 1983)).


## II.    The Record Does not Support a  Mail Tampering Claim

Plaintiff finally complains that defendants violated his constitutional rights by

virtue of a single instance of tampering with his incoming mail.  Complaint, ¶ 31.  This

instance was the subject of Grievance # 41097, which plaintiff appealed to final review.

(Exh. II.)  Plaintiff claimed his niece sent him a $150 money order on 12/22/02 and

accidently included a powerball ticket.  Mrs. Brimmer, the Mail Room Supervisor,

advised plaintiff that the letter had been returned at the direction of the security captain.

(II.)  Plaintiff claimed his family never received the return mail, and demanded that a

trace be placed on his mail to the return address, or that his account be credited with

the money order.  Business Manager Loughry responded that policy regarding

contraband was followed and that once the mail was returned, the facility would have no

control over it.  Id.

The tampering allegedly occurred on December 22, 2002, or more than two

years before plaintiff bought this action on April 6, 2005.  Thus, it is barred by the

applicable two year statute of limitations.  O'Connor v. City of Pittsburgh, 440 F.3d 125

(3d Cir. 2006) (no "continuing violations" of Section 1983, except for claims of a hostile

working environment); Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir. 1985) (two

years as the applicable statute of limitations for Section 1983 cases in Pennsylvania

18

federal courts).  Furthermore, a single instance of alleged mail tampering, such as plaintiff cites, is insufficient to state a claim.  <u>Alexander v. Gennarini</u>, 144 Fed. appx. 924 (3d Cir. 2005).

In any event, plaintiff's complaint that he should receive a credit for the $150 money order (since it was included in the piece of ultimately lost mail that was returned to sender) fails as a matter of law.   This is not a claim of interference with his mail insofar as plaintiff is concerned, but rather, a lost property claim.

The existence of a grievance system as an adequate post-deprivation remedy for lost property established under DC-ADM 804 insulates the prison defendants from the claim of constitutional violation in this respect.  <u>Austin v. Lehman</u>, 893 F.Supp. 448 (E.D. Pa. 1995); <u>Mattis v. Dohman</u>, 2007 WL 1314891 (E.D. Pa.); <u>Harris v. Herbik, 2006</u> WL 3694500 (W.D. Pa.).  This post-deprivation remedy has recently been supplemented by the recognition of a state tort remedy for prisoners complaining of lost property.  <u>Williams v. Stickman</u>, 917 A.2d 915 (Pa. Cmwlth. 2007).

## <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully requested that the Court grant defendants' Supplemental Motion for Summary Judgment.

Respectfully submitted,

**THOMAS W. CORBETT JR.,**
**Attorney General**


By:     /s/ Mary Lynch Friedline
        MARY LYNCH FRIEDLINE
        Senior Deputy Attorney General
        PA I.D. # 47046

        Susan J. Forney
        Chief Deputy Attorney General
        Chief, Litigation Section


OFFICE OF ATTORNEY GENERAL
5th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA 15219

Date:  August 31, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2007, I electronically filed the foregoing **Brief in Support of Supplemental Motion for Summary Judgment** with the Clerk of Court using the CM/ECF system. And I hereby certify that I have mailed the foregoing document by United States Postal Service to the following non CM/ECF participants:


Cassis M. Clay, Sr., DQ-5954
SCI-Pittsburgh
P.O. Box 99991
Pittsburgh, PA 15233


By:    /s/  Mary Friedline
       MARY FRIEDLINE
       Senior Deputy Attorney General



OFFICE OF ATTORNEY GENERAL
5th Floor, Manor Complex
564 Forbes Avenue
Pittsburgh, PA  15129